JAMES P. BROWN, and JEREMIAH L. BROWN, Appellants, *v.* ESTHER E. GAFFNEY *et al.*, Appellees.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

Where a conveyance is in fact a mortgage, it continues a mortgage, although there may be change of owners, if each mutation is coupled with the notice of the original transaction.

The visible possession of premises, is sufficient to charge a purchaser with notice of all legal and equitable claims of the occupants.

If a mortgagee purchases the equity of redemption for a grossly inadequate price, under circumstances which show that the mortgagor was induced to make the sale by threats from the mortgagee, a court of equity will allow a redemption.

In September, 1848, B. Gaffney purchased from the canal trustees, sub-lots 4 and 5, in lot 2, block 48, Chicago, on the usual terms, one-fourth down, and balance in one, two and three years, with interest, annually, in advance; and received a certificate of purchase. About this time he erected a dwelling-house on the premises, in which he or his family have resided. He was indebted to Gurnee, Hayden & Co., and to secure them, February 25, 1849, he made an assignment to them of the canal certificate, and afterwards, in March, 1850, gave them a quit-claim deed of the premises, and took back a contract of same date, by which they agreed to re-convey to him the property on being paid $164.30, September 1, 1850; $198.72, March 13, 1851, and $577.49, September 1, 1851— in all, $940.51. About this time Gaffney desired to go to California, and applied to J. L. Brown to assist him with means. He did so to the amount of about $235, and took two notes, each of that amount, and Gaffney assigned the contract he had with Gurnee, Hayden & Co., to Brown. Gaffney returned in 1856. While he was absent, Brown paid up what was due to Gurnee, Hayden & Co. on the lots, and assigned to his son, J. P. Brown, who obtained a patent to the land. Gurnee, Hayden & Co. paid the two notes last due to the canal trustees, and the amount was included in the contract. After Gaffney's return, about 10th March, 1857, a settlement between him and the Browns took place, and J. P. Brown deeded to Gaffney the whole of the lots, and Gaffney deeded back east twenty feet of lot 4, and gave his three notes for $603.16 each, payable in one, two and three years, and a mortgage with power of sale upon the residue, the west forty feet, and Brown surrendered the notes of $235 each. The first of these notes secured by the mortgage not being paid when due, Brown proceeded to advertise the forty feet for sale, and then

in May, 1858, offered to pay $500, a span 'of horses and wagon, for the right of redemption of Gaffney in this west forty feet. Gaffney drew up a deed for the whole sixty feet, or the two lots, and sent it by one G. W. Richardson, to be delivered on payment of money and delivery of property to Richardson. Richardson, on the 22nd May, 1858, delivered this deed to Brown, receiving all of the property but only $425 of the money, Brown holding back $75 to pay taxes then unpaid. Gaffney put this money on deposit, and in the fall he withdrew it, and Richardson informed the Browns that he had the money and property to pay them, if they would take it and surrender the deed.

In October, 1858, an action of ejectment was brought, which, in November, 1860, resulted in a verdict and judgment for J. P. Brown.. Whilst this suit was pending, Gaffney died, leaving Esther E., his widow, and the other complainants, minors, his children, and leaving a will by which he devised his real estate to his widow, during her life, remainder over to his children in fee.

On the 24th February, 1860, the widow and children file their bill in chancery, sworn to by the widow, in which it is charged that J. L. Brown obtained the title from them to his son, James P. Brown, by false and fraudulent statements. Amendments to this bill were filed. An entire new case is made by the amended bill, which sets up that Gaffney assigned the Gurnee, Hayden & Co. contract to Brown, as a security for advances to redeem the property from Gurnee, Hayden & Co., and for what he had advanced to Gaffney to help him off to California.

Complainants charge that Gaffney mortgaged the property to Brown, to secure him for advances made to enable Gaffney to go to California, and to redeem the property from Gurnee, Hayden & Co.

The answers set up that the assignment by Gaffney to Brown, when Gaffney went to California, was an absolute one, and not given as a mortgage or security for any sum of money whatever.

The decree of the Superior Court is substantially as follows:

This cause coming on to be heard upon the bill and amended bill of complaint, answers of defendants, James P. Brown, and Jeremiah L. Brown, the depositions, exhibits and other proofs on file in the cause, and documentary proofs referred to in bill and amended bill and answers, and considered and taken by the parties as on file, it being agreed and stipulated by the solicitors on both sides, that all deeds and instruments of writing or documentary evidence on file or of record in the recorder's office of Cook county, or any of the courts of said county, referred to as proofs or exhibits, but not on file as proofs in the cause, should be considered as though they were on file as part of the proofs in the cause, as well as those referred to in the bill and amended bill, as in the answers of the defendants, and that the court might refer to the same. And the court being now sufficiently advised of and concerning the same, it is ordered, adjudged and decreed, that the defendant, James P. Brown, be and he is held, deemed and regarded as mortgagee of the said Bernard Gaffney, deceased, of the premises in controversy, as described in the complainant's bill and amended bill, and that the complainants be and they are allowed to redeem by paying said James P. Brown all moneys advanced upon the faith of that security and mortgage, with interest thereon, at the rate of six per cent. per annum, from the times the same were respectively advanced, and that an account thereof be taken, the court allowing in such account the following items :

First, the amount paid under the contract between Gurnee, Hayden & Co., and Bernard Gaffney, (the defendants conceding that the same includes the payments made to the canal trustees under the certificate of purchase, both in evidence in the cause.)

Second, the taxes and assessments on said premises.

Third, all necessary expenses paid or incurred by either of said defendants in or about procuring the title of said premises from said canal trustees.

The court refused to allow in such account the following items, namely :

First, the two notes made by Bernard Gaffney for $235 each, to Jeremiah L. Brown.

Second, the money and property left with G. W. Richardson, as the consideration of the deed, dated May, 1858.

Third, the taxed costs and expenses in the ejectment suit mentioned in the bill of complaint and in evidence.

Fourth, the expenses of advertising the property for sale under the mortgage, of date of March 13, 1857, in evidence.

Fifth, the actual money and property advanced by Jeremiah L. Brown to Bernard Gaffney, as the consideration of the two notes of $235 each; and that a master in chancery hear proofs and state the accounts, etc.

And it is further ordered, adjudged and decreed, that upon the confirmation of said report, said complainants do pay to the said defendant, James P. Brown, the amount which shall be certified to be due to him for principal and interest, within thirty days after the order of confirmation, and thereupon the said James P. Brown do convey all his right, title and interest, either in law or equity, to the premises in controversy, by a proper deed to be settled by said master. But in default of said complainants paying to the said defendant, James P. Brown, the amount so reported due, with interest thereon, as aforesaid, it is ordered, adjudged and decreed, that said master sell the said property, or so much thereof as shall be sufficient to pay the same, and for that purpose, he shall advertise the same for sale, etc., for twenty days previous to the time of said sale; and shall sell so much thereof as will be sufficient to pay said principal and interest, for cash in hand, giving a certificate of purchase, which shall certify the said sale; and that said purchaser or purchasers will be entitled to a deed of conveyance within fifteen months from the date thereof, unless before that time the same shall be redeemed according to the statute in such case made and provided. And it is further ordered, adjudged and decreed, that the said defendant, James P. Brown, be enjoined and restrained perpetually from enforcing his said judgment at law, in ejectment against said complainants, and that he be, and is hereby, perpetually enjoined from proceeding at law, upon any of the deeds or mortgages from Bernard Gaffney to him, against said complainants. And that all said deeds be held and considered as

mere mortgages to secure the principal and interest aforesaid. And it is further ordered, adjudged and decreed, that said complainants recover of said defendants their costs and charges, by them expended, in and about the prosecution of this suit ; and that the same be taxed, including the costs and charges of said master's report.

W. T. BURGESS, for Appellants.

U. F. LINDER, for Appellees.

WALKER, J. In this case the complainants claim as the widow and heirs of Bernard Gaffney, deceased. He, on the 1st day of September, 1848, purchased the property, in litigation, of the commissioners of the Illinois and Michigan canal, for the sum of six hundred and twenty dollars. He, at the time of the purchase, paid one-fourth of the sum, and the interest in advance on the remainder for one year. He also gave his notes for the balance, in equal portions, payable in one, two and three years, with interest from date, and received a certificate of purchase, stating the facts, and that he would be entitled to a deed on the payment of the notes. On the 13th day of March, 1850, being indebted to Gurnee, Hayden & Co., Gaffney assigned this certificate to them, and, at the same time, gave them a quit-claim deed to the premises in question, and received from them an obligation that on his paying them the sum of $940.51, they would reconvey the premises to him.

Afterwards, on the 17th day of March, 1851, Jeremiah L. Brown became the assignee of the certificate of purchase from Gurnee, Hayden & Co., and took from them a quit-claim deed of their interest in the premises. The evidence shows that the assignment was made at the request of Gaffney.

By the arrangement between Gaffney and Gurnee, Hayden & Co., there can be no doubt that Gaffney became a mortgagor of his interest to them. This is too well settled to be controverted. And by the assignment of the certificate of purchase by Gurnee, Hayden & Co. to Brown, he assumed to the transaction the same attitude and acquired the same rights

held by Gurnee, Hayden & Co., and nothing more, so far as the evidence in the record discloses. But it is insisted that Brown acquired Gaffney's interest in the premises, divested of the right of redemption. That by a parol agreement between them, when the assignment was made to Brown, the right of redemption by Gaffney was extinguished, and that Brown acquired not the right of a mortgagee, but the absolute title, as a purchaser. The only evidence in the case tending to prove that such an arrangement was made, is that of Brown, who, having assigned his interest to his son, became a witness in the cause. He states, that it was in consideration of his furnishing to Gaffney the means of going to California. We are disposed to consider his evidence as though he was free from interest in this suit, and as a competent witness. But owing to the attitude he bears to the case, and the relationship he bears to the other plaintiff in error, we must receive his evidence with great caution. He is the assignee of Gurnee, Hayden & Co., and the assignor and father of the defendant below, now claiming title to the lands as his assignee; and in every stage of this controversy, whether in or out of court, he has taken an active, if not an interested part.

He testifies, that Gaffney relinquished his right of redemption in the premises, in consideration of the means furnished to enable him to go to California. The language employed by Gaffney is not given, but simply his conclusions of the legal effect of the transaction. It appears from this evidence, that the money and property advanced by him to Gaffney did not exceed in value three hundred dollars. That he received from Gaffney his notes for four hundred and seventy dollars. This would seem to be a loan by Brown to Gaffney. If a purchase, it may be asked, why take these notes? or can we suppose that Brown would demand, or that Gaffney in addition to these notes would surrender the right of redemption to the home of his family, and all he possessed, for the sum of less than three hundred dollars? This would seem to be improbable, and that he should manifest such generosity to a man of wealth is still more improbable. But other witnesses testify that the witness Brown stated to them, that he held the prop-

erty subject to redemption. This is the substance of the testimony of Yoe, George W. and William M. Richardson. The evidence of these witnesses is irreconcilable with Brown's testimony. They, so far as the record discloses, are disinterested, and their evidence overcomes, by a decided preponderance, that of Brown.

The conduct of Gaffney during the whole transaction, was such as clearly indicated that he regarded Brown as a mortgagee and not the owner, nor can Brown's conduct and declarations be reconciled with any other supposition. And when the equity rule—" once a mortgage always a mortgage" —is applied, nothing but clear and highly satisfactory evidence should take the case out of its operation. The evidence in this case is not of that character. We are, therefore, of the opinion that by the assignment to Brown by Gurnee, Hayden & Co., the relation of mortgagor and mortgagee was not disturbed, but still subsisted unimpaired.

Whilst that relation still subsisted, Brown assigned his interest in the premises to his son, James P. Brown, who claims the title, divested of the right of redemption, by virtue of a deed from the canal commissioners, by surrendering to them the original certificate to Gaffney. If James P. Brown took the assignment, with notice of Gaffney's right to redeem from his father, he acquired no more than his father's rights. He thereby received the rights, and occupies the position of his father in every respect. That he either had notice of the condition of the title at the time he purchased, or had such notice as put him upon inquiry and charged him with notice, is true, as Gaffney was in the open, visible possession of the premises. This is held, by numerous decisions of this court, to be amply sufficient to charge a purchaser with notice of all legal and equitable claims of the occupant. He then received the assignment, subject to redemption, and did not in the least change that right by procuring a deed from the canal commissioners.

But it is insisted that the relation of the parties to this property was changed by the arbitration of Yoe, and a court of equity will not interfere, however inequitable the transaction

might be.   After a careful examination of the record, we are unable to perceive any evidence showing that there was an arbitration of this controversy.   Yoe states, that Gaffney requested him to make a proposition to Brown, to divide the property, which he did, and it was accepted, and when they came to consummate the agreement, it was found to be inconvenient to make an equal division, when a new agreement was made.   By it a portion of the property was deeded to Brown, and a mortgage was given to him upon the balance, to secure Gaffney's notes for $1,800.   There is in this nothing that has the slightest semblance to an arbitration, but it was simply a contract made by the agency of a third person.   If this was held to be an arbitration, we are at a loss to perceive what description of agreement, made through an agent, would not be an arbitration.   But even if it was what it is claimed, still the parties abandoned it, and entered into a new and different agreement, by which it was agreed that Gaffney was to deed the whole property to Brown upon his paying to Gaffney $500 in money, and delivering him a pair of horses, wagon and harness, worth about three hundred dollars.

Much stress is placed upon this feature of the case, especially as the money was paid to Richardson, and by him to Gaffney, and the horses, wagon and harness were delivered to Richardson, who was authorized to deliver the deed and receive the money and property.   He was only authorized to deliver the deed, upon a full compliance with the terms of the agreement.   Yet James P. Brown would only pay $425, claiming that he should retain the $75 to pay taxes on the property.   Gaffney insisted that Richardson had done wrong in receiving less than the full amount, and took the money to Chicago and deposited it in a bank, and gave the certificate to Richardson to hold until the matter was settled, or to let Brown have it and the property if he would receive them. It was offered to him, but he refused to receive it and give up the deed.

It appears that when this arrangement was made, Brown, through Richardson, made the offer, and said that Gaffney might do worse.   Gaffney at first declined the offer, but after-

wards concluded he could do nothing else, as the property would be sold in a few days without redemption, and accepted the proposition. We perceive from this evidence that Brown intended to coerce Gaffney into this arrangement, as the statement "he might do worse," could have been designed for no other purpose. And Gaffney evidently so understood it, as he said "he could do nothing else, as the property would be sold in a few days without redemption." When it is remembered that this property was worth seven or eight thousand dollars, and all of the incumbrances held against Gaffney, by Brown, did not exceed three thousand dollars, it seems perfectly apparent that Brown was using the power that a creditor possesses over his debtor, to coerce him into a relinquishment of his right of redemption. This, we think, was oppressive and unconscionable, and calls for the interposition of a court of equity to afford relief. The fact that the only title held before this transaction occurred, by plaintiff in error, was a mortgage to secure the payment of money, no injustice can result to him by compelling him to receive his money with interest, and satisfying his mortgage ; on the other hand, if a redemption were not allowed, the complainants would sustain a loss of perhaps not less than five thousand dollars.

The decree of the court below is affirmed.

*Decree affirmed.*