## ALBERT SMITH

*v.*

## HEIRS OF JAMES JACKSON.

1. NOTICE—*possession by tenant is notice of landlord's equities.* The actual possession of land by a tenant is constructive notice of the equities of the landlord in the same, especially when it is notorious that the tenant is paying rent to the landlord.

2. Where the owner of land, to secure his attorney in becoming his bail in a criminal prosecution, and his fees and expenses, conveyed the same by an absolute deed, which was recorded, taking back a defeasance, and the owner appeared and kept the grantee harmless as bail, and afterwards paid him his fees and expenses, and the attorney sold and conveyed the land to another, who claimed to be an innocent purchaser, it was *held,* on bill to have the deeds canceled, that the actual occupancy of the land by the owner's tenant at the time of the second conveyance, was constructive notice to the purchaser of the original grantee's equities, and that the conveyances were properly set aside.

3. SAME—*character of possession necessary to afford notice.* The possession of land, to afford notice of the party's rights, must be as open, notorious and exclusive as is required to constitute adverse possession under the limitation laws, but it is not necessary that it should have all the characteristics of an adverse possession.

4. PRACTICE IN SUPREME COURT—*evidence excluded must be preserved.* No error can be assigned upon the exclusion of a deposition when it is not contained in the record brought to this court, so that it can be seen whether the testimony was material.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

April 15, 1870, James Jackson, being under indictment in the Logan county circuit court for an alleged criminal offense, and required to give bail in $1000, being the owner of the quarter section of land situate in that county, and having retained the law firm of Wyatt & Hackney to defend him, entered into an arrangement with his counsel, or Hackney, whereby the latter should become bail, and Jackson was to secure him as such bail, and the firm, for their costs and fees

in his defense, by mortgage upon said land. Accordingly, Hackney had him execute a deed, in form absolute, of the land, reciting a consideration of $3000, he (Hackney) giving a formal defeasance upon a separate paper. Hackney filed the deed for record on the day of its date, being that above mentioned. The defeasance was not filed for record, but Jackson remained in possession of the land by his tenants, who continued afterwards paying rent to him. July 20, 1870, there having been no breach of condition, and Jackson being in possession by his tenants, in fact paying rent to him, Hackney and wife executed a deed of the same land to Smith, who had never seen it, who bought without making any inquiry, and, as he claims, paid Hackney for the land the sum of $3500, that being the consideration recited in his deed. Jackson having appeared to the indictment, saved his bail harmless. The prosecution having been dismissed by the court, and Wyatt & Hackney paid their costs and charges by Jackson, in full, he brought this bill in the court aforesaid to have said deeds set aside, on the ground that his conveyance to Hackney was but a mortgage, and had been fully satisfied; that, although the defeasance was not recorded, yet the circumstance of his being in possession by tenants, and Smith having bought without seeing the property or making inquiry, was sufficient to charge him with notice of complainant's equities; also on the ground of fraud. Hackney absconded, but he and his wife were made parties defendant with Smith— were brought in by publication and their default entered. Smith answered. Before hearing, Jackson died, and his administrator and heirs were made parties by supplemental bill. Upon the hearing on pleadings and proofs, a decree passed, declaring the mortgage satisfied and canceled, and setting aside the conveyance to Smith. He brings the record to this court by appeal.

Messrs. HAY, GREENE & LITTLER, for the appellant.

Messrs. BEASON & BLINN, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The only question in this case is, whether the circumstances in evidence were sufficient to warrant the court below in holding that Smith, the purchaser from Hackney, was affected with constructive notice of Jackson's equities.

The deed from Jackson to Hackney was, in form, an absolute warranty deed, and by the latter filed for record on the day of its execution. It was, however, given under an arrangement for a mortgage, and a formal defeasance was executed by the grantee. The transaction being between attorney and client, and the former having, as the evidence clearly shows, conceived the design of cheating his client out of the property at an early stage of the business, it was put in a form to enable him to accomplish that result, and the defeasance was not filed for record.

It is a justifiable inference that a party thus dealing with his confidential legal adviser acts upon his advice. But Jackson remained in possession by his tenants and was in the receipt of rents from them at the time of Hackney's conveyance to Smith. As between Jackson, the grantor, and Hackney, the grantee, and between the grantor and Smith, the alleged *bona fide* purchaser, if he is affected with constructive notice, Jackson's possession at the time of the conveyance to Smith was that of a mortgagor before condition broken, and was consistent with the actual state of the title. But counsel for appellant say, that when their client purchased, the records showed an absolute warranty deed from Jackson to Hackney, from whom he purchased; that possession will be considered as following ownership; that, although, by the common law, the vendor must, himself, have obtained possession by livery of seizin before he could pass any interest in land, yet, by force of our statute, livery of seizin is dispensed with, and by the Statute of Uses the possession is transferred in all cases to the use of the *cestui que use*, who may, if there is no adverse

possession, make a lease for years, or absolute conveyance, without actual entry.

They further insist, that it follows, from this view, the possession of the occupants was consistently and apparently that of Hackney; that, in order to affect their client with constructive notice, it must be adverse in the sense required to ripen into a bar under the Statute of Limitations.

It is unquestionably true, that a vendor who has not obtained possession by livery of seizin may, if there is no adverse possession, make a lease for years, sell and convey without entry; and it is a legal inference that the ownership carries with it the possession. But does such legal presumption ever arise except in cases where the land is vacant and unoccupied? Or, in other words, can it arise where another is in the actual occupation?

It must be borne in mind, that there is a distinction between actual possession and the right of possession, and those presumptions which are subject to rebuttal and those which are not. If a grantor remain in possession after conveyance absolute, it is not as owner, but as tenant to his grantee, subject to ouster by ejectment or proceedings for forcible detainer, and no matter how long such possession is continued by the sufferance of the landlord, it can not be regarded as adverse without a clear, unequivocal and notorious disclaimer of the landlord's title. *Jackson* v. *Burton,* 1 Wend. 341; *Swart* v. *Service,* 21 id. 36.

Now, it is maintained by appellant's counsel that, regarding the absolute deed of record and the possession of Jackson as the only ingredients, then, inasmuch as the possession of the grantor was not adverse to Hackney in the sense necessary to ripen into a bar by lapse of time, it can not be regarded as any notice affecting the purchaser, Smith. We understand that, so far as regards the openness, notoriety and exclusiveness of the possession to operate as notice of the rights of the occupant, it must be the same as required to constitute adverse possession. But that it must wear all the characteristics of

17—76TH ILL.

an adverse possession in the sense expressed in the authorities just cited, can not be the law.

Suppose the mere circumstance of the grantor remaining in possession, after conveyance absolute, does place him in the position of tenant at will or sufferance to the grantee, so that his possession is not adverse to the grantee, still there is no law against his establishing by convention a different kind of tenancy under the grantee. Now, suppose, in the case at bar, instead of the transaction being that of a mortgage, Jackson had given a conveyance intended to be an absolute one, but had taken back from his grantee a lease for life, remained in possession under that lease, but failed to have it recorded. This is no unusual transaction. His possession would be no more adverse in that case than that of a mere tenant at sufferance. But would counsel contend that a purchaser, while Jackson was so in possession, would not be affected with constructive notice of his title under such life lease? But why should any different rule be applied in the case of a mortgagor in possession who, through the circumvention of his confidential legal adviser and mortgagee, had failed to have a defeasance recorded?

It is the tendency, and properly so, of the American courts, under the policy of our recording acts, not to extend the doctrine of constructive notice from possession beyond its proper limits. The doctrine itself is firmly established, and yet not favored. There is nothing unreasonable in a rule which requires a purchaser of land in the open, visible and exclusive possession of a person other than his vendor, to make inquiry as to that person's rights, and to take subject to those rights if he neglects to do so. It has been the rule of all the courts, so far as we are aware, that, in case of a tenancy, the possession of the tenant would amount to constructive notice to a purchaser of such tenant's title. The divergence of authority has been upon the question whether notice of a tenancy would affect the purchaser with constructive notice of the lessor's title, and that question is involved in this case. Jackson was

not in the actual occupation of the premises, but in possession by others, and known to be in the receipt of rents from the persons in actual occupation. This latter is an important circumstance, for, while it might not be an unusual circumstance for a vendor to remain in possession, after conveyance, as a mere tenant at sufferance of his grantee, yet it is an unusual circumstance for him to not only remain in possession but to be in the receipt of rents, after conveyance, as in this case.

It is true, this fact was not known to Smith, but he, according to his own testimony, purchased without even going or employing an agent to see the land, or make inquiry of the persons in occupation. Had inquiry been made, the fact would readily have been ascertained that they were paying rents to Jackson. The counsel who appear for him in this court were his legal advisers, he says, and to whom he presented the abstract for examination. It is not likely that counsel of such eminence would have failed to advise him of the necessity of inquiry whether there was any tenancy by others; for the law had been laid down by this court, as early as the case of *Pittman* v. *Gaty*, 5 Gilm. 186, that possession by the tenant was the possession of the landlord, and constructive notice of the landlord's title. That is the settled law in Pennsylvania, also in Iowa. See *Dickey* v. *Lyon*, 19 Iowa, 544, where the principal cases upon both views of the question are collected and ably commented upon.

In *Barnhart* v. *Greenshields*, 9 Moore, P. C. 18, referred to in the Iowa case, it was held that, in all the cases, the possession relied upon was the *actual occupation* of the land, and that the equity sought to be enforced was on behalf of the party so in occupation; and it was further said, there was no authority for the proposition that notice of a tenancy is notice of the title of the lessor, or that a purchaser, neglecting to inquire into the title of the occupier, is affected by any other equities than those which such occupier may insist on. This doctrine has since been modified in its application, and it has been laid down that the court, in the

passages of that judgment in which they speak of the *person in occupation*, did not mean merely the person who, by himself or his laborers, tilled the land, but also meant the person who is known to receive the rents from the persons in occupation of the land.    2 Sug. on Vend. & P. 8 Am. Ed. 774, 775; *Knight* v. *Bowyer*, 23 Beav. 609 ; 2 DeG. & J. 421.

Smith lived in Springfield, the distance of only a few miles from the county seat of Logan county, where the land is situated, accessible by railroad. It is a singular and suspicious circumstance that he purchased without ever having seen the land, or made, or caused to be made, any inquiry of the persons in occupation in respect to their or their lessor's title. Common experience teaches us that, unless the purchase is a mere sham, men do not conduct in that way.   What man of common prudence would pay $3500 cash for a quarter section of land so easy of access, without any view of the property or inquiry as to possession?   Under these circumstances, the proof of payment of the consideration is not satisfactory.   It was done by merely producing drafts with Hackney's indorsement upon them.   Smith was on the stand and could have shown, if such was the truth, that Hackney received and retained the proceeds of these drafts.   He did not do it, nor did he testify that he, in fact, had no notice of Jackson's equities.

The court are of opinion that he was clearly affected with constructive notice of those equities, if he did not have actual notice.

He can take no advantage, either, from the order of May 21, 1870, which Hackney palmed off upon his victim.   Smith could not have purchased upon the faith of a paper in the hands of Jackson, and which he never saw.   The only effect of that order is, to show Hackney's design to defraud Jackson out of the property.   Nor has he bettered his position by putting improvements on the property.   He had notice, in fact, of Jackson's equities before putting them on.

No error can be assigned upon the exclusion of Hackney's deposition, for the reason that the deposition is not contained in the record, and the court can not see whether anything testified to was material.

The decree of the court below must be affirmed.

*Decree affirmed.*