## LEVI H. STRONG *et al.*
### *v.*
## PATRICK SHEA *et al.*

1. BURNT RECORD ACT—*when record will not be restored.* Where a party's land had been sold under a trust deed, and he procured a person to purchase the title for his benefit, such person holding the title as a mere security for the repayment of the money advanced, which the original owner afterwards repaid with interest, and such person so holding the title conveyed the same to a third person and he to another, during all which time the original owner was in the open and actual possession of the land, the court refused to restore the record of such conveyances which had been destroyed by fire.

2. MORTGAGE — *deed, when taken as a security.* Where one person advances money for another with which to purchase the title to land, taking the conveyance in his own name, as a security for the money so advanced, with interest, his deed will be treated as a mortgage, and on repayment he will be required to convey to the person for whom he so purchased.

3. NOTICE—*by possession of land.* Where a person is in the actual, open and notorious possession of land, claiming to own the same, this will afford notice to the world of all his rights and equities in the same.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. C. E. CRAFTS, for the appellants.

Messrs. DENT & BLACK, and Mr. H. F. VALLETTE, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The purpose of the bill was to restore certain records destroyed by fire, and to confirm complainants' title to the lands therein described. The court below, on hearing, dismissed the bill, and the case is brought here by the appeal of the complainants.

The chain of title through which complainants claim is this: The defendant Patrick Shea, being the owner of the property, and indebted to Eisendrath by his promissory note, bearing date July 27, 1858, payable one year after date, for $800, with interest at the rate of ten per cent per annum, conveyed the same to a trustee to secure the payment of the promissory note. On the 30th of December, 1861, the trustee sold and conveyed the property to Eisendrath, pursuant to the power in the deed. On the 23d of January, 1862, Eisendrath and wife quitclaimed the property to Charles E. Boyer. On the 12th of October, 1863, Boyer and wife quitclaimed to John R. Parsons. Parsons and wife quitclaimed to Peter Smith on the 18th of May, 1869. Smith, on the 26th of June, 1869, conveyed, by warranty deed, the undivided one-half to the complainant Levi H. Strong, and the other undivided one-half, to George S. Bell. Bell conveyed that undivided half to the other complainants, Frederick W. Strong, Lyman A. Strong and Samuel B. Leiter, by warranty deed, April 2d, 1873.

The substance of the defense is, that Boyer obtained the title from Eisendrath for Shea, pursuant to a preceding agreement with Shea, and held it merely as security for the repayment to him, by Shea, of the money, with accruing interest, which he paid Eisendrath for the title; that Shea was, all the

time, in the actual and exclusive possession of the property, claiming as owner, exercising acts of ownership thereover, openly and notoriously, by making lasting and valuable improvements thereon, cultivating the land and appropriating the rents and profits to his own use, cutting and selling the timber growing thereon to Boyer and others, and paying all taxes assessed against the property; and that Boyer was repaid in full the amount paid by him to Eisendrath, long prior to the conveyance to the complainants.

A homestead right was also set up in Shea, and relied upon; also claim and color of title, made in good faith, accompanied with actual possession and payment of taxes for seven successive years.

Without entering into an elaborate discussion of the evidence, it is sufficient to say, in our opinion, the defense is clearly made out.

The agreement between Boyer and Shea, that Boyer should pay the amount due to Eisendrath for Shea, is fully proved. It is also proved that when he bought the title of Eisendrath, he professed to buy it for Shea; and in his account kept with Shea, he charged up the amount against Shea. We think, also, the evidence shows this amount was repaid him by Shea, out of wood which Shea sold him from a portion of this land. Boyer was implicitly trusted and relied upon by Shea. Shea was ignorant of business matters and unable either to read or write, and to this and the fact of Boyer's death is, manifestly, attributable the delay of the reconveyance to Shea. Boyer, although a man worthy of the reliance Shea placed in him, was, nevertheless, as a business man, careless and negligent— and to this, and not to any design to repudiate his trust, we attribute his quitclaim to Parsons. The fact that, subsequent to that quitclaim, he paid a large sum of money to redeem the property from a previous sheriff's sale on a judgment against himself, and the memorandum found among his papers, calling it Shea's land, and stating that he had paid Parsons in full and that Parsons was to reconvey the land to him, show, as we think, conclusively, that he did not design,

by the quitclaim to Parsons, to deny Shea's right to the land. So, also, all the evidence bearing upon the question being considered, we think Parsons took the quitclaim from Boyer as security for money due from Boyer, merely, with the understanding that when it was paid he should reconvey to Boyer. Parsons' quitclaim to Smith was in bad faith. Smith had no interest in the purchase, and his name was used by Lowerby as a cover to accomplish some sinister design of Lowerby—most likely to help strengthen what he knew to be a bad title.

The proof fails to show actual knowledge, by Shea, of any of the transactions and conveyances by which the chain of title under which complainants' claim was made, subsequent to the conveyance to Boyer; and there is no principle of estoppel that can be invoked against him.

Shea's equity, we think, is sufficiently established under the principle announced in *Brown et al.* v. *Gaffney et al.* 28 Ill. 149, *Reigard* v. *McNeil*, 38 id. 400, *Wolford* v. *Harrington*, 74 Pa. (St.) 311, and *Ruckman* v. *Alwood et al.* 71 Ill. 158.

Shea was in the actual and exclusive possession of the property, all the time. His acts of ownership were open and notorious—apprising the public that he claimed to be the owner. He cultivated the tillable land, cut the meadow, and cut and used wood, and sold wood from the woodland, and paid the taxes on all the land. The quitclaims simply professed to convey, and actually conveyed, only the interest the several grantors had in the land. *Busch* v. *Huston*, 75 Ill. 346. And the possession of Shea was, under the circumstances, ample notice of every claim he made to the land. *Smith* v. *Heirs of Jackson*, 76 Ill. 254; *Flint* v. *Lewis*, 61 id. 306; *Brown* v. *Gaffney*, *supra*.

With regard to the rulings on the admission of evidence, we see no substantial error.

The memorandum made by Boyer, which, it is claimed, was improperly received, although not evidence against Parsons, was clearly competent to show how Boyer understood he was holding the title; and it did distinctly show that he regarded it as Shea's land.

The evidence in regard to the conveyance, by Parsons, of the Missouri lands, we think was admissible as a part of the *res gestæ;* and we also think that it tended to prove his bad faith in quitclaiming to Smith, instead of releasing to Boyer.

On the whole record, we see no substantial error, and the decree must be affirmed.

*Decree affirmed.*