### E. N. Rea v. H. Croessman.

1. NOTICE—*Possession of Lands to Persons Taking Mortgages.*— Where a party fraudulently obtained a deed of conveyance, without consideration, from the owner of lands, and surreptitiously placed it upon record, and afterward mortgaged it to a third person, the owner in the meantime being in the open and visible possession of the land, *it was held* that the possession was notice to such third person of the fraud perpetrated upon the owner and of his rights, and that the mortgage was a cloud upon the title of the lands in question.

2. POSSESSION—*Of Lands—Notice.*—Possession of land by a grantor is notice of his retained equitable rights in it.

**Bill to Remove a Cloud.**—Appeal from the Circuit Court of Franklin County; the Hon. EDMUND YOUNGBLOOD, Judge, presiding. Heard in this court at the August term, 1900. Reversed and remanded with directions. Opinion filed March 11, 1901.

C. H. LAYMAN and HART & SPILLER, attorneys for appellant.

BENJAMIN W. POPE, attorney for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This is a bill in chancery, brought by appellant against appellee, to remove a cloud from the title to eighty acres of land owned by appellant.

The Circuit Court dismissed the complainant's bill, and he has brought the case here by appeal, and assigns as error the decree dismissing the bill.

The facts in the case are undisputed, and we find them to be in substance as follows:

Rea v. Croessman.

James C. Stanfield, in his lifetime, was the owner and in possession of the north half of the northeast quarter of section thirty-six, in township five south, in range one, east of the third principal meridian, in Franklin county in this State, and on the 12th of October, 1894, he (his wife, Alice, joining with him) mortgaged the land to appellant, to secure the payment of the sum of $500, and seven per cent interest, one year after the date of the mortgage. By oversight of appellant, the mortgage was not recorded until May 31, 1897.

On the 9th of March, 1896, James C. Stanfield died, leaving a will by which he devised all of his property, real and personal, to his wife, Alice. The will was duly probated, and the widow remained in possession of the land, personally and by tenant, until January 19, 1898, when she sold and conveyed it to appellant by deed of warranty for an expressed consideration of $720, which was about its true value, the mortgage to appellant being a part of the purchase price of the land. Appellant took possession of the land under his deed, and has since retained it.

April 17, 1897, one T. I. Galloway, who claimed to be a real estate agent, and who resided at Benton, some twelve miles distant from Mrs. Stanfield's, having learned that she desired to sell her farm, drove out to see her, and represented to her that he had a trade on hand whereby he could sell her farm for $1,200 cash, and he would do so if she desired, and if she, to expedite the trade, would convey the land to him, he would convey to the parties, and would go to appellant, pay him his $500, and bring the balance of the money to Mrs. Stanfield, and if the trade failed, he would reconvey the land to her. Mrs. Stanfield, confiding in Galloway, and without other advice, accordingly executed a deed of the land to Galloway on that date, and he had it put on record two days thereafter.

On the next day after the deed to Galloway was recorded he went to DuQuoin, in Perry county, and executed to appellee a mortgage on the land to secure his note to appellee, for the sum of $400, of even date with the mortgage,

due two years after its date, with interest at seven per cent.
The note was for borrowed money.

On May 19, 1897, Galloway represented to Mrs. Stanfield
that his trade had failed and that he would reconvey the
land to her and let it go, but did not inform her that he
had mortgaged the land, nor is it claimed by appellee that
she ever received any of the money raised on the mortgage.

On May 22, 1897, Galloway delivered to Mrs. Stanfield
a deed, which he had already had recorded, conveying the
land to her.

The mortgage from Galloway to appellee is the cloud
that appellant seeks to have removed from his title. There
are other minor facts indicatory of Galloway's true charac-
ter, but they need not be stated, as enough already appears
to show that an honest purpose on his part was a stranger
to him. He knew when he stated to Mrs. Stanfield that he
had a customer to whom he could sell the land for $1,200,
that every word of his story was false. He knew that he
was getting the title to the land in himself, through a scheme
of falsehood and villainy, and he hurried the matter up with
unusual speed, until he got the deed to him on record, and
then he lost no time in going to DuQuoin, in another county,
and negotiating a loan to himself for $400, reckless of the
rights of appellant under his mortgage, which Galloway
knew all about, and the existence of which he doubtless did
not make known to appellee.

No attempt is made by counsel for appellee to screen
Galloway, but it is confidently claimed that the recording
laws of the State will fully protect appellee in his claimed
rights under his mortgage; and so they will, if they are of
any avail in a case like this, but we are of the opinion they
are not. The recording laws are not all of the law that pro-
tects the title of the owner of land, who is in possession of
it. Long before recording laws were enacted, the owner
of land, of which he had actual possession, either by himself
or by a tenant, was as safe and secure in his title under the
rule of the common law, as he afterward became by having
his title papers recorded under the recording laws. The

English common law was adopted by the legislature of this State as early as 1819, and is still the law, and in our opinion is the law that governs this case. See Rev. Laws of Ill. 1829, p. 102. The case then stands thus:

Alice Stanfield was, on April 17, 1897, the owner of the land, subject to a mortgage for $500, executed by her husband and herself in his lifetime, to appellant. The mortgage was not recorded, but that fact makes no difference with the rights of the parties to this case. She was, on the date stated and before, in open, visible possession of the land, either by herself or by tenant, (it is immaterial which). On the said 17th of April, 1897, Galloway procured, through gross fraud and false representations, a deed of the land from her, but the deed was made and delivered without any intention of either party to it, that possession of the land should go with the deed, and accordingly it did not; but Mrs. Stanfield remained in possession until she sold and conveyed it to appellant. Galloway, in violation of the terms on which the deed was delivered to him, and in furtherance of his scheme to defraud Mrs. Stanfield, went to another county and found a person who loaned him $400, to secure which, he mortgaged the land and pocketed the money, and soon afterward reconveyed the land to Mrs. Stanfield.

Under the facts as they appear, the formal legal title to the land passed from Mrs. Stanfield to Galloway, but the substantial equitable title and right of possession never passed to him, but remained in Mrs. Stanfield, and Galloway could mortgage no more than he had. It follows, then, that Mrs. Stanfield's possession of the property, either by herself personally or by tenant, was notice to appellee of her title and rights under it, and appellee took his mortgage burdened with such rights and notice of them; and appellant, by the deed from Mrs. Stanfield to him, succeeded to all her rights in the premises, and the recording laws can not be invoked to shield appellee. The necessary thing for him to have done, to make his mortgage secure, was to have gone to the premises and inquired of the occupant or occupants,

by what right he or they were there; when he would doubt-less have learned that Galloway had not purchased the place, and had no real interest in it, and that any proposed mortgage executed by Galloway would be in fraud of Mrs. Stanfield's rights; in short, he would have learned what he has since learned, but too late. But he testified that he never saw the land, and never made any inquiries to learn whether any person was in possession of it or not.

It follows that the Circuit Court erred in dismissing appellant's bill, and for this error the decree is reversed and the cause remanded, with directions to enter a decree as prayed for in the bill.

That possession of land by a grantor of it, is notice of his retained equitable rights in the land, see McConnell v. Reed, 4 Scam. 117; Metropolitan Bank v. Godfrey et al., 23 Ill. 579; I. C. R. R. Co. v. McCullough, 59 Ill. 166; White v. White, 89 Ill. 460; Ford v. Mascall, 107 Ill. 136; Pomeroy's Eq. Jur., 2d Ed. Sec. 115.

That possession of land by a tenant is possession by the landlord, see Franz v. Orton et al., 75 Ill. 100; Smith v. Jackson, 76 Ill. 254; Whitaker v. Miller et al., 83 Ill. 381; Pomeroy's Eq. Jur., 2d Ed. Sec. 118.

Reversed and remanded, with directions.