Brueggestradt v. Ludwig.

---

# Henry Brueggestradt v. Karl G. Ludwig, Anna C. Ludwig, Edwin S. Hartwell, William H. Mulholand, William Thiel, Anton Dietsch and Richard C. Hedrich.

1.   EQUITY PRACTICE—*Hearing on Exceptions Before the Chancellor is Confined to the Evidence Before the Master.*—Depositions which were not offered before the master, and were not considered by him, can not be considered by the chancellor on the hearing of exceptions to the

master's report. The chancellor has no right to consider any evidence not before the master.

2. SAME—*Presumptions in Favor of the Master's Report.*—Where an order of reference directed the master to consider all testimony, depositions and proofs theretofore taken in the cause in the absence of an affirmative showing that the master disobeyed the order of reference, this court will presume that he did his duty and obeyed the order.

3. SAME—*Where the Master Erroneously Rejects Testimony.*—Where the master erroneously refuses to hear and consider evidence, the proper practice is to re-refer the cause to the master, with directions to admit the testimony and proceed with the matter accordingly.

4. SAME—*Master's Findings Advisory.*—The master's findings are entitled to great weight when he has heard the witnesses, but they are not entitled in an appellate tribunal to the same consideration as that of the chancellor where he has heard the witnesses. Such findings are only advisory to the chancellor.

5. DURESS—*Where Courts of Equity Will Afford Relief.*—Where the action of a creditor is oppressive and unconscionable, and intended to coerce the debtor into the performance of an act against his interest, a court of equity will afford relief.

6. DECREES—*Must be Supported by the Allegations of the Bill.*—It is not enough that the proof makes a good case. If there is no allegation to which the proof may be applied, there can be no decree.

**Bill of Foreclosure.**—Appeal from a decree of the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1898. Affirmed in part and reversed in part with directions. Opinion filed May 22, 1899.

**Statement of the Case.**—Appellant, on October 4, 1895, filed his bill in the Superior Court of Cook County to foreclose two trust deeds made by appellees Karl G. Ludwig and wife, one dated October 1, 1894, to Otto C. Butz, trustee, and William J. Haerther, successor in trust, to secure the note of said Ludwig for $2,000, due in five years from date, with interest at seven per cent per annum, payable semiannually, the interest being evidenced by ten coupon notes of $70 each providing for foreclosure in case of default in payment of principal or interest for thirty days or of waste, or of non-payment of taxes; the other trust deed dated March 20, 1895, to William Gibson, trustee, to secure the note of said Ludwig for $225, due in five years from date with interest at seven per cent per annum payable semiannually, the interest being evidenced also by coupon notes

of $7.87 each, providing for foreclosure in case of default in payment of principal or interest for thirty days or of waste, or of non-payment of taxes, and both said trust deeds conveying the same property, a lot in Rogers Park, Cook county, Illinois.

The grounds of the foreclosure alleged were default in payment of interest becoming due October 1, 1895, on the note of $2,000, waste and failure to pay taxes.   A receiver was appointed pursuant to the prayer of the bill.

Among other defendants to the bill were Edwin S. Hartwell, William Thiel and Richard C. Hedrich, who claimed mechanics' liens on the property, and Anton Dietsch, a judgment creditor of Ludwig, who was allowed to intervene on petition by him filed and have his rights adjusted.

The lien claimants all answered the bill and also filed cross-bills except Hedrich, who made his answer a cross-bill. William H. Mulholand filed an intervening petition January 9, 1897, asking to be made defendant, which was allowed and on January 13, 1897, filed his cross-bill by which he claimed to have acquired title in fee to said property by quit-claim deed from Ludwig and wife dated October 28, 1896, and that the two trust deeds described in appellant's bill were fraudulent and without and consideration except as to the sum of $155 under the trust deed of March 20, 1895, and asking the cancellation of the trust deed of October 1, 1894, and also of the trust deed of March 20, 1895, except as to the sum of $155, which he offered to pay to appellant and also offering to have reconveyed to appellant, or as the court might direct, a certain South Dakota farm referred to *infra*.

September 22, 1896, Ludwig and wife were defaulted on the original bill, but on April 28, 1897, they filed their petition asking that their defaults be set aside and for leave to answer, which was allowed.   They answered, and also July 9, 1897, filed their cross-bill making the same claims as to the two trust deeds described in the original bill as Mulholand, setting forth the facts constituting the fraud in substance as shown *infra* in the findings of the decree, admit-

ting they had conveyed said lot to Mulholand as he alleged, but that the conveyance was in the nature of a mortgage and made the same offers to do equity as made in the cross-bill of Mulholand.

William J. Haerther, who was made a defendant to the bill and all the different cross-bills, and was charged in the cross-bills of Mulholand and the Ludwigs, together with appellant, with conspiracy to defraud the Ludwigs, made default, and his evidence was not taken by any of the parties.

October 14, 1896, the cause being then at issue as to the original bill, the intervening petition of Hedrich and the cross-bills of the lien claimants, it was referred to a master to take proof and report the same with his opinion on the law and evidence.

After the depositions of Herman Zarnecke, William W. Hopkins and John J. Myers, witnesses on behalf of the lien claimants and Mulholand, had been taken and filed in the Superior Court, and after considerable testimony had been taken before the master, the issues were made up on the cross-bills of Mulholand and the Ludwigs, and both said cross-bills, upon the issues so made, were in August and September, 1897, referred to the same master to take proof and report his conclusions thereon of law and fact, and the master was thereby ordered to consider all testimony, depositions and proofs theretofore taken in the cause.

The hearing proceeded before the master, and after the evidence was closed, appellees moved the chancellor to direct the master to admit in evidence certain examined copies of the Cook county records and testimony respecting the same offered before the master, November 30, 1897, which motion was continued for hearing until the coming in of the master's report upon the whole case.

The master made his report, and after hearing the objections of the respective parties thereto, it, together with said objections, was filed in court March 16, 1898. The objections were ordered to stand as exceptions, and the hearing was had April 19, 20, 21 and 22, 1898, before the

chancellor upon all the pleadings, the master's report, the evidence taken and offered before the master, including the evidence which was offered November 30, 1897, which the master refused to admit, the depositions of Zarnecke, Hopkins and Myers, and the exceptions to the master's report. It does not appear at what time the chancellor made his decision on the exceptions to the master's report. June 7, 1898, the draft of a final decree was presented to the chancellor to be entered, whereupon appellant moved to strike out of said draft the part thereof which found that the master was in error in rejecting the evidence offered by the appellees November 30, 1897, above mentioned, and finding that said evidence was properly before the chancellor for consideration on the hearing of the master's report, which motion the chancellor denied. The chancellor also, at the same time, denied the motion of appellant, then made, to re-refer said cause to the master, with directions to permit him to offer proof in explanation and rebuttal of said testimony offered November 30, 1897.

The rules of the Superior Court governing masters in chancery provide, among other things not here material, that on a reference to take proof and report "his conclusions thereon to the court, the master shall have full power and discretion to pass upon all questions of competency of witnesses and the propriety and relevancy of all questions or interrogatories put by counsel, and the master shall note his ruling upon each objection in the minutes of the proceedings before him, and when the master has ruled that a party or witness shall answer a given interrogatory it shall be the duty of such witness or party to answer in the same manner as if such witness or party had been so directed by the court, and in case that the master shall hold that any question is irrelevant or incompetent, the same shall not be answered. If either party shall except to the ruling of the master upon the admissibility of testimony or evidence, they shall, after the testimony and evidence before the master is closed, and before he makes his report, thereon, bring such objections and exceptions to the master's ruling upon

the testimony before this court, and if the court shall sustain the ruling of the master, he shall immediately proceed to make his report upon the testimony and evidence submitted to him, and if such objections and exceptions to the rulings of the master shall be sustained, the master shall proceed to take such further testimony as the court may direct and shall disregard, in making up his report, such testimony as the court. may rule to be incompetent or irrelevant."

A part of the evidence so offered before the master, on November 30, 1897, and rejected by him, was that of witness George D. Cole, by whom appellees' counsel offered to prove that certain papers, purporting to be copies of various entries and records in the recorder's office of Cook county, were true copies of such entries and records, and that he examined said entries and records and compared said purported copies therewith, and found the same to be true and correct copies of said entries and records. The chancellor sustained appellees' exception to the rulings of the master in this respect but it does not appear from the record that the offered testimony of this witness was taken either by the court, or the master.

The report of the master, after making numerous findings of fact and conclusions of law based thereon, to the effect, in substance, that there was no fraud in reference to the two trust deeds sought to be foreclosed and that appellant was entitled to decree forclosing the same for the sum of $2,684.55, which he found to be due thereon; that there was due also to the several lien claimants the several amounts claimed by them, with legal interest, and to the judgment creditor Dietsch, $424.30, and that they, respectively, were entitled to liens on said property, giving preference to each of said liens on certain proportions of the value of the property, not necessary to be here enumerated.

The chancellor entered the final decree June 7, 1898, which, after reciting that the hearing was had upon the several matters, as above stated, sustains all the exceptions of Ludwig, Mulholand and Hartwell thereto, approves

the report as to the amounts found due the lien claimants and the judgment creditor, Dietsch, and finds in substance, viz.:

On May 18, 1893, and for several years prior thereto, appellant and Haerther were on terms of intimate business acquaintance and dealing, and appellant, on that date, had loaned to Haerther $4,000 on his note due on or before one year thereafter, which was secured by a trust deed to apellant on property in Cook county, which appellant believed to be a first lien thereon, but which was in fact a junior lien, as Hearther then well knew. Haerther did not pay appellant this note at maturity; appellant discovered in the summer of 1893 that his lien was a junior lien, and demanded that Haerther repay the $4,000, or produce good security therefor. Haerther, who was, on October 22, 1894, insolvent and financially irresponsible, had to that date failed to comply with appellant's demands.

October 1, 1894, Ludwig, being the owner in fee of the premises in question in Rogers Park, desiring to erect a dwelling thereon for a home, in order to provide funds therefor, made the $2,000 note and interest notes evidencing the interest on the principal note above described, and together with his wife, made the said trust deed to Butz. On the solicitation of Haerther, Ludwig delivered these securities to Haerther, as agent for an undisclosed principal who would purchase the same if the security proved good, the notes being executed by and payable to the order of Ludwig, and by him indorsed in blank, and Haerther then agreed to pay over to Ludwig the sum of $2,000 if the securities for the proposed loan proved satisfactory, but he fraudulently converted the notes and trust to his own use, and refused to account to said Ludwig therefor, or to pay him said $2,000, or any part thereof.

On October 22, 1894, appellant, knowing of Haerther's fraud in converting said securities to his own use, by fraudulent coercion and collusion with Haerther, obtained said securities from Haerther as part payment upon, or as a better security for, the said amount due from Haerther to

appellant, but that appellant paid no consideration for said securities at the time of obtaining the same. Appellant also knew at this time that Haerther was habitually dishonest in his business methods and dealings, and had been before that time financially associated and interested with Haerther in the promotion and outcome of other dishonest and unlawful enterprises.

Before taking said securities appellant made no inquiry of Ludwig in relation thereto, and as Haerther was his agent, appellant is charged with notice of all the facts and circumstances relating to Haerther's possession of the securities, and the absence and want of consideration therefor. Appellant failed to prove that he acquired said securities from Haerther in good faith for value and in the usual course of business.

The transfers of said securities from Haerther to appellant was fraudulently concealed from Ludwig until January, 1895, whereupon Ludwig immediately applied to appellant for a payment of the $2,000 promised by Haerther, and continued to look to appellant for payment thereof.

From October 22, 1894, to February 26, 1895, appellant and Haerther, in their relations and dealings with Ludwig, pursued a course of fraudulent concealment, evasion and delay, by means of which Ludwig was worn out, disheartened and impoverished, and his family reduced to want and distress for the common necessities of life, and he was rendered unable to further press his claim on appellant. Appellant and Haerther, took fraudulent advantage of Ludwig's necessities and exhausted condition, and did, in January and February, 1895, confederate, conspire and co-operate by artifice and intimidation to trick and coerce Ludwig into taking something else of little or no value in lieu of the cash due him, and by the false and fraudulent representations of appellant and Haerther, and by their oppressive and unconscionable conduct toward Ludwig he was, on February 26, 1895, induced to take in settlement of his claims the sum of $135 cash, and an equity of redemption in a farm in South Dakota, and to convey said prop-

erty at Rogers Park, by warranty deed, to one Hendricks, the attorney of appellant, in secret trust for appellant, to surrender to Haerther certain of his promissory notes, and to allow appellant to sell for him, Ludwig, certain stock of the Ristow-Poths Manufacturing Co., then belonging to Ludwig, for the sum of $1,000 in cash, which appellant promised to do.

Appellant falsely represented and warranted said farm in South Dakota to be of the value of $2,000 in cash, which was subject to a mortgage of $400, and was of little or no value above the mortgage, as appellant then well knew. Ludwig, in making said settlement, acted without the advice of counsel, and under the stress of necessitous conditions, induced by the wrongful acts of appellant, and Haerther was at the time in a situation of equitable duress.

This agreement was not carried out by appellant as to the sale of the stock and payment to Ludwig therefor of $1,000, and he also fraudulently held and retained the warranty deed to said Hendricks. While appellant, through Hendricks, held the title to said Rogers Park lot, he became obligated to pay out for improvements thereon $155, which entered into and became part of the consideration for the note of $225 and trust deed securing the same hereinbefore described. He also, during that time, threatened to evict Ludwig from said premises unless he paid to appellant, as rent therefor, $14 per month.

On March 20, 1895, Ludwig, acting under the force and pressure of circumstances as above stated, and being in a condition of equitable duress thereby, made and delivered to appellant said note of $225, and with his wife executed the said trust deed to Gibson securing the same, whereupon appellant destroyed said warranty deed to Hendricks.

The consideration and inducement for the making of the last mentioned note and trust deed, was Ludwig's reinvestment with the legal title of the Rogers Park lot, the discharge of Ludwig from $70 interest on said $2,000 note, the forbearance of appellant to evict Ludwig from said premises, and forbearance to foreclose the trust deed of October

1, 1894, thereon, and the said sum of $155 paid by appellant. The actings and doings of appellant from the month of January, 1895, to and including the taking of the note and trust deed of March 20, 1895, were part and parcel of a continuing fraudulent scheme and design to deprive Ludwig of said Rogers Park lot without just compensation, and the payment of said $155 by appellant was induced and brought about by reason of appellant's own fraud and wrong-doing; that it was no consideration for said note of $225, and he was not entitled to any lien on said Rogers Park property under the trust deed of March 20, 1895, but only to a credit *pro tanto* on the amount of $525 due from appellant to Ludwig, hereinafter stated. Appellant did not show that he was lulled into a sense of false security by the making and delivery to him of the note and trust deed of March 20, 1895, by Ludwig, nor had appellant shown himself to have taken any action prejudicial to his rights against Haerther by reason thereof.

On February 26, 1895, when said South Dakota farm was conveyed to Ludwig, it was incumbered by a mortgage of $400, bearing interest at eight per cent per annum, on which there was overdue and unpaid for interest on that date the sum of $32. On the return to appellant of the title to the South Dakota farm, he is chargeable with the amount of said mortgage, said interest of $32, and lawful interest from February 26, 1895, to the date of the decree, which was found to be $525. On October 28, 1896, Ludwig and wife, by their quit-claim deed, conveyed said Rogers Park lot to the appellee Mulholand, as a mortgage and security for a certain indebtedness theretofore incurred by Ludwig. The decree then ordered and directed that Ludwig and wife forthwith convey to appellant, by good and sufficient deed, said South Dakota farm, describing it specifically; that said appellant surrender and cancel said $2,000 note, the said coupon notes evidencing the interest thereon, and the trust deed securing the same, also the $225 note, the interest notes evidencing the interest thereon, and the trust deed securing the same, and that he also pay to Lud-

wig the said sum of $525 in cash, and in default of appellant complying with the decree in surrendéring and canceling said notes and trust deeds, that the master in chancery release the same.   It was further ordered and decreed that the receiver surrender possession of said Rogers Park lot to Ludwig, render an account of his receipts and disbursements, and also to pay to the clerk of the court all moneys remaining in his hands received from the rents and income thereof, to remain subject to the further order of the court.   Also, that if the surplus in the receiver's hands should, on the auditing of his account by the master (which was directed), be in excess of $285, then such amount should be paid to Ludwig, and if such surplus should be less than $285, then such amount should be paid by Ludwig to the clerk of the court, to remain subject to the further order of the court. It was further ordered and decreed, that within thirty days after said Ludwig should be admitted to the possession of the Rogers Park lot, he should pay to said lien claimants and Dietsch the amounts severally found to be due thereon, and in default thereof, that said premises be sold to satisfy such amounts at such time and place and in such manner as the court might direct.

DENNIS & RIGBY, attorneys for appellant.

MANNING & COLE, attorneys for appellees.

MR. PRESIDING JUSTICE WINDES, after making the above statement, delivered the opinion of the court.

A thorough examination of the master's report, the exceptions thereto, and the evidence, in the light of counsels' arguments, lead us to the conclusion the master's report, that there was no fraud in reference to the two trust deeds sought to be foreclosed, is not sustained by the evidence, and that the findings of fact made by the chancellor, the substance of which is contained in the statement preceding this opinion, are in the main correct, and also that the decree, except as will be stated *infra*, is correct.   The finding

of the decree that Ludwig, in making and entering into the agreement with appellant and Haerther, by which the South Dakota farm was conveyed to him, " acted without the advice of counsel," is not, in our opinion, sustained by the evidence. We think the evidence shows that he acted in disregard of the advice of his counsel, and because of his necessities, and by reason of the fraudulent, oppressive and unconscionable conduct of appellant and Haerther toward him. The finding of the decree that the incumbrance on the South Dakota farm bore interest at eight per cent per annum, and that there was due and unpaid $32 interest thereon on February 26, 1895, and that $525 is a reasonable sum to be paid by appellant to Ludwig on account of said incumbrance and interest, when Ludwig should return the legal title of said farm to appellant, is not sustained by the evidence, except as to the sum of $400, the amount of said incumbrance, and for that amount only in the event the legal title of said farm should be returned to appellant cleared of said incumbrance, as well as all other claims or liens thereon caused by Ludwig, or by any one who held the title for Ludwig, up to the time of such reconveyance to appellant. The evidence shows that this land was conveyed to one J. A. Brenner, and the person holding the incumbrance on it was L. J. Brenner. There is no evidence that the incumbrance was ever paid by Ludwig, or by any one for him. The direction of the decree in this regard was therefore erroneous.

· The direction of the decree that the receiver pay any surplus which might, on an accounting by him, be found in his hands in excess of $285 to Ludwig, does not seem to be based on any finding of fact by the master or the court, nor upon any evidence to which our attention has been directed, or which we have been able to discover in the record. Inasmuch, however, as in the view we take of the rights of appellant, he can have no interest in the funds in the receiver's hands, and as no one else has complained of this part of the decree, we see no reason why it should be disturbed.

Prior to the submission of this cause, two motions were made, one on behalf of the appellee Thiel, and the other on behalf of the appellee Hartwell, suggesting diminutions of the record and asking leave to supply the same by filing supplemental records, which motions were reserved to the final hearing. These supplemental records relate solely to the respective mechanics' liens claimed by these appellees. If we are correct in the conclusions we have reached, appellant has no interest in the allowance of these claims, no one else complains of them, and we, therefore, do not pass upon these motions.

It is claimed that the chancellor erred in considering on the hearing of the master's report certain depositions, being those of the witnesses Zarnecke, Hopkins and Meyers, taken at Redfield, Dakota, because, it is said, they were not offered before, and were not considered, by the master. If the depositions were not offered before the master, and were not considered by him, it would have been error in the chancellor to consider them on the hearing of exceptions to the master's report. The chancellor has no right, on the hearing of a master's report, to consider any evidence not before the master. Prince v. Cutler, 69 Ill. 267–72; Cox v. Pierce, 120 Ill. 556–9.

But, as shown in the statement above, the order of reference directed the master to consider all testimony, depositions and proofs theretofore taken in the cause. In the absence of an affirmative showing that the master disobeyed the order of reference, we will presume that he did his duty and obeyed the order.

Moreover, it appears by a stipulation of counsel entered into before the master during the progress of the hearing, which refers to the testimony of these very witnesses, he thereby recognizes these depositions as being before the master. Also, the master in his report says that considerable testimony was taken upon the question of the value of the South Dakota farm. The depositions of these three witnesses relate wholly to that subject, and there is not much testimony aside from these depositions relating to the

value of this farm. We think appellant's claim in this respect is not tenable. We are of opinion that the chancellor did not err in sustaining the exceptions of appellees to the rulings of the master, in rejecting the testimony offered by them on November 30, 1897, because the copies of entries and records then offered related to the dealings between appellant and Haerther prior to October 22, 1894, which, if they were correct copies, as was offered to be shown by the witness Cole, they were competent and material evidence on the questions as to whether, prior to that date, appellant and Haerther had intimate business relations toward each other; that Haerther was indebted to appellant in a large amount, as far back as May 18, 1893; that appellant knew that Haerther was habitually dishonest, and, whether, on October 22, 1894, appellant caused to be released certain incumbrances on Haerther's real estate, then owned, or which had been owned by him. But having so ruled, we think the proper practice to have been pursued was to re-refer the cause to the master, with directions to admit the testimony of the witness Cole, when he could have been cross-examined and appellant would have had an opportunity, if he so desired, to offer evidence to disprove Cole's testimony, or to explain, if he could, the several entries and records. The rules of the Superior Court, we think, contemplate such a practice as we have indicated, though, no doubt, they authorize the court to direct otherwise. Under the circumstances here shown, the offered evidence of the copies of the entries and records was not complete or competent, under the objections of appellant's counsel, made at the time, that they were not certified, and there was no other proof of their genuineness and correctness, without the testimony of the witness Cole that they were true copies. The testimony of Cole was not taken, and therefore there was no proof before the chancellor that these purported copies were true copies of said entries and records. Some of the findings of the decree are, in part at least, based on this offered evidence, but if the evidence which was properly admitted was sufficient to sustain the decree of the court, the error was harmless. Dunn v. Berkshire, 175 Ill. 243.

Appellant, on cross-examination, admitted that he gave the money to Haerther which he claims was the consideration for the purchase by him of the $2,000 note and trust deed, six months before October 22, 1894, and declined to swear that it was not paid to him twelve months before; said that he did not know exactly when it was. Also, when asked if he did not have trouble with Hearther about an amount which he claimed that Hearther owed him in the summer of 1894, said that he did not remember. He also said that he did not pay Hearther on October 22, 1894. The witness Arenz testified that he was present when Ludwig told appellant that he, appellant, "got the papers from Haerther by threats," and that thereupon appellant told Ludwig he was not yet Amercanized, and put Ludwig out of appellant's saloon.

The witness Gibson testified that appellant told him "that Haerther owed him (appellant) the money and he got this $2,000 trust deed because he did owe him the money," and also that appellant said he obtained this note and trust deed "in satisfaction of a debt that Haerther owed him." We think the clear preponderance of the evidence, properly admitted, is that on and for a long time prior to October 22, 1894, Haerther was indebted to appellant to an amount exceeding $2,000, and that he received this note and trust deed from Haerther in part payment thereof, or as additional security for such indebtedness, and also that he knew that Haerther was not the owner of the note and trust deed, and had no right to dispose of them except for cash. Appellant therefore failed to prove that he obtained this note and trust deed upon the payment by him of $2,000 cash, in good faith and without notice of Ludwig's rights, as he claimed to have done.

It is claimed by appellant that this note and trust deed in his hands are not affected by any equities between Ludwig and Haerther—that Haerther was Ludwig's agent to negotiate them, and as such agent transferred a good title to appellant, upon the theory that he is in the position of an original mortgagee, and cites in support of this con-

tention, Keohane v. Smith, 97 Ill. 156; McIntire v. Yates, 104 Ill. 491; R. R. v. Thompson, 103 Ill. 187, and other cases. These cases are not, in our opinion applicable, because he has not shown that he paid value or parted with any rights, and had constructive if not actual notice that Haerther had no right to dispose of the securities except for cash. Had he paid the cash to Haerther at the time, a different question would be presented.

The further claim is also made that Ludwig, when notified of the transfer to appellant, recognized and ratified the validity of such transfer by promising to pay the interest on the note, and that by the receipt of $135 from appellant, and the agreement of settlement pursuant to which he received the conveyance of the farm in South Dakota, and made and delivered the two notes and trust deeds of $225, in which was included the first interest note of $70, which became due on the $2,000 note, and by the arrest of Haerther, which, it appears, was caused by Ludwig upon the charge of embezzlement, Ludwig is now estopped from alleging the invalidity of either of these trust deeds. We think this contention is answered by the findings of the court, which in our opinion are sustained by the evidence, that all these actions of Ludwig and transactions with him were induced by the fraudulent, oppressive and unconscionable conduct of appellant and Haerther toward Ludwig, and by his necessities and the stress of circumstances under which he was placed by reason thereof, amounting to moral duress. Brown v. Gaffney, 28 Ill. 149–58; Russell v. Southard, 12 How. (U. S.) 138; Montgomery v. Pickering, 116 Mass. 227–9.

In the Brown case, *supra*, the court held that where the action of a creditor was oppressive and unconscionable, and intended to coerce the debtor, it called for the interposition of a court of equity to afford relief. In the Russell case, *supra*, it was held that where a debtor was in distress for money, and a stranger without funds or resources, his consent to a sale of his property for a grossly inadequate consideration, at the dictation of a money lender who took

advantage of the pressure of his wants, a court of equity would not consider a consent thus obtained was sufficient to fix the rights of the parties—that "necessitious men are not, truly speaking, free men," and that "an unconscientious advantage, which ought not to be retained," was sufficient to be shown to avoid such a purchase.  In the Montgomery case, *supra*, which is to the same effect in principle, it was also held that the original fraud was not cured nor waived, although the party defrauded subsequently made a deed conveying away her rights, under legal advice, with full knowledge of the original fraud and of her legal rights.

In this connection it is also claimed that both the cross-bills of Mulholand and Ludwig show a complete ratification by Ludwig of the validity of the note and trust deed of $2,000, and a settlement of Ludwig's claims against Haerther.  These cross-bills set forth the facts substantially as found by the decree, which, as we have seen, when all taken together, do not amount in equity to a ratification or settlement which should bind Ludwig or estop him.

It is also argued that as the master heard the witnesses, his findings ought to carry great weight—that he was in a better position to judge of the facts than the chancellor, and his findings should have the same weight which is accorded to the findings of a chancellor when the witnesses are heard in open court.  While it is true that the master's findings are entitled to great weight when he has heard the witnesses, it has not been held that they are entitled in an appellate tribunal to the same consideration as that of the chancellor when he has heard the witnesses.  The master's findings are only advisory to the chancellor.  Fairbury, etc., Bd. v. Holly, 169 Ill. 12; Ennesser v. Hudek, Id. 494.

The contention is made that appellees have been successful before the chancellor only upon the theory that, under the rule announced in Olds v. Cummings, 31 Ill. 188, and repeatedly followed in this State, appellant took the note and trust deed of $2,000 subject to all equities between Ludwig and Haerther, and that this theory must fall because no such case is made by the pleadings.  We do not think

the rule in Olds v. Cummings need be invoked to sustain the decree, and are inclined to the opinion the rule of that case is not applicable here. Appellant may be considered as the original mortgagee, but can not prevail, because his money was not paid for the note and trust deed. He parted with nothing, and knew Hearther had no right to dispose of the securities except for cash, or should have known the circumstances within his knowledge being considered. It is also said the finding in the decree, that Haerther was appellant's agent when he received the note and trust deed from Ludwig, is improper and can not stand because there is no such allegation in the pleadings—that it is not enough that the proof makes a good case if there is no allegation to which the proof may be applied. Ludwig's cross-bill, as we have seen, substantially alleged the facts as found by the decree, and from those facts the conclusion follows that Haerther was appellant's agent. It was not necessary that the pleadings in so many words should have a direct averment that Haerther was appellant's agent. In the view we have taken of appellant's claim, he is not interested in the mechanics' liens nor in the judgment against Ludwig; no one else makes complaint thereof, and we therefore do not discuss the questions raised by appellant with reference to either of these liens.

The other contentions made by counsel in their briefs, both as against and in support of the decree, have been given consideration, but we deem it unnecessary to refer to them specially; as none of them could effect the disposition of the case which we have made. The decree is affirmed in all respects, except as indicated with reference to the South Dakota farm and the payment to Ludwig of $525 by reason of the incumbrance thereon, and interest, in which respects the decree is reversed, with directions to the Superior Court to modify it so that it shall direct a re-conveyance of the South Dakota farm to appellant, free and clear of all claims, liens and incumbrances done or suffered by F. Arenz or his grantees to the date of such conveyance, and the incumbrance of $400, within a time to be fixed, but

before appellant shall be required to cancel and surrender said notes and trust deeds, and that appellant pay to Ludwig the sum of $400, the amount of said incumbrance, less the sum of $155, due from Ludwig to appellant, simultaneously with such conveyance. ·

Affirmed in part and reversed in part, with directions.