GALLEY *v.* WARD *& a.*

A purchaser or an attaching creditor may be bound by constructive notice of the title of a stranger who is in possession of land under an unrecorded deed, although the claimant was not aware of that possession.

BILL IN EQUITY, to set aside the levy of an execution. Facts found by a referee. May 13, 1871, Jane Smith, wife of Robert Smith, being seized in her own right of a tract of land called the "Little lot," sold it to the plaintiff for $800, and intended and believed that she did then convey it in fee simple to him. But the deed, by mistake of the scrivener, was executed by her husband, in which she merely released dower and homstead. This was not recorded till November 12, 1875. September 18, 1878, Jane and Robert executed and delivered to the plaintiff a deed of the lot, for the purpose of ratifying and confirming the latter's title, and of fulfilling all that they supposed they did do by their former deed. The plaintiff entered into possession of the lot upon receiving the first deed, and has remained in the open, visible, exclusive, and notorious possession of it ever since, cultivating the land, cutting the grass, pasturing his cattle therein, cutting off the wood, rebuilding the walls and fences, and tearing down the buildings, which were old and dilapidated, and from the best of the timber erecting a coopers' shop.

The defendant Ward, in 1876, without any consideration, assigned to the defendant Morris a claim against Jane Smith; Morris, in April, 1876, brought suit on this claim, and obtained an execution, which was levied on the "Little lot." Before bringing the suit, Morris made inquiries at the registry of deeds to ascertain if Jane Smith had conveyed this lot, and was informed that she had not. The deed of May 13, 1871, was indexed "Smith Robert to Galley William." Before the attachment, Morris had no knowledge or suspicion that Jane had sold the lot, and it did not appear when he first learned of it. Ward and Morris both live in Boston, Mass.

*French,* for the plaintiff.

*Stevens & Parker,* for the defendants.

FOSTER, J. At the time of Morris's attachment and levy, the plaintiff held the equitable title to the "Little lot" by virtue of the agreement made with Jane Smith in 1871, under which he had paid the full consideration for the property, and had entered into its occupation. He was entitled to a decree for a specific performance of this agreement, and to such a conveyance as he received September 18, 1878. 2 Story Eq., *s.* 761; *Scoby* v. *Blanchard,* 3

N. H. 170, 177; *Hadduck* v. *Wilmarth*, 5 N. H. 181, 189; *Chartier* v. *Marshall*, 51 N. H. 400; *Newton* v. *Swazey*, 8 N. H. 9; *Cutting* v. *Pike*, 21 N. H. 347; *Kidder* v. *Barr*, 35 N. H. 235, 254; *Doe* v. *Doe*, 37 N. H. 268; *Ewins* v. *Gordon*, 49 N. H. 444.

It is not claimed that Morris had any actual knowledge of the plaintiff's title. He merely knew as a fact that the legal title appeared by the record to be in Jane Smith. And if the plaintiff's title is to prevail in this suit, it must be on the ground of constructive notice. It is substantially admitted in the brief for Morris, and is undoubtedly the law in this state, that a purchaser of land, knowing that a third person is in the open, visible, and notorious occupation of it,—an occupation inconsistent with the idea that he is a tenant,—is chargeable with notice of such facts in reference to the latter's title, whether legal or equitable, as he would have learned upon reasonable inquiry. *Colby* v. *Kenniston*, 4 N. H. 262; *Hadduck* v. *Wilmarth*, 5 N. H. 181; *Warren* v. *Swett*, 31 N. H. 332; *Patten* v. *Moore*, 32 N. H. 382; *Jones* v. *Smith*, 1 Hare 43; *Tardy* v. *Morgan*, 3 McL. 358; *Landers* v. *Brant*, 10 How. 348, 375; *Ferrin* v. *Errol*, 59 N. H. 234; *Cooper* v. *Newman*, 45 N. H. 339; *Nute* v. *Nute*, 41 N. H. 60; *Braman* v. *Wilkinson*, 3 Barb. 151; *Bank* v. *Flagg*, 3 Barb. Ch. 316; *Doolittle* v. *Cook*, 75 Ill. 354; *Losey* v. *Simpson*, 3 Stock. 246; Big. Fr. 288; 1 Story Eq., *s.* 399, note 4; Hill. Vend. 408; Jones Mort., *s.* 600. And the nature of the plaintiff's possession in this case was sufficient to put a purchaser having knowledge of the facts on inquiry as to the plaintiff's title.

But it is contended that Morris did not know of the plaintiff's possession of the land, and that therefore the doctrine of constructive notice cannot be applied to him. If he had known it, on the authorities above cited he could have gained no title against the plaintiff by his attachment and levy. Is his ignorance sufficient excuse? When a grantee records his deed, a subsequent purchaser is chargeable with constructive notice of its contents. It is wholly immaterial whether he has seen the deed, or has any knowledge of its existence. It is, as sometimes expressed, a conclusive presumption of law that he had notice of the grantee's deed. Malone Real Prop. Trials 427; *Morrison* v. *Kelly*, 22 Ill. 610. On the same ground it is at least a *prima facie* presumption, that when there is such a possession by a third party as would charge a purchaser who knew of that possession with knowledge of an adverse title, a purchaser ignorant of that possession without excuse would be equally chargeable. And this doctrine, in both cases, rests on the ground of fraud or culpable negligence. As it is a part of a purchaser's duty to examine the record, to inform himself as to the legal title he expects to acquire, a failure to attend to that duty would amount to negligence on his part, and would be a fraud on a previous purchaser under a recorded deed, if he could, by proving his ignorance, acquire a title. By the same mode of reasoning, if he is wilfully

ignorant of such facts of notorious occupation by a stranger as would put a purchaser cognizant of those facts on his guard against some unrecorded deed or equitable claim, his want of knowledge is due to his own laches and failure to attend to an apparent duty. In *Hughes* v. *U. S.*, 4 Wall. 232, *Field*, J., says that if a purchaser neglects to make inquiry as to the possession, " he is not entitled to any greater consideration than if he had made it and ascertained the actual facts of the case." See, also, *Edwards* v. *Thompson*, 71 N. C. 177; *McKinzie* v. *Perrill*, 15 Ohio St. 162; *Bailey* v. *Richardson*, 9 Hare 734; *Gooding* v. *Riley*, 50 N. H. 400, 403–405; *Strong* v. *Shea*, 83 Ill. 575; *Hommel* v. *Devinney*, 39 Mich. 522; *Patton* v. *Hollidaysburg*, 40 Penn. St. 206; *Perkins* v. *Swank*, 43 Miss. 349. Nor is there any distinction in this respect between a purchaser and a creditor. A creditor is bound by constructive notice of the contents of a recorded deed, as well as a purchaser, and there seems to be no reason why they should not both stand on the same ground with reference to an equitable title in a third party, in a case like the present. *Priest* v. *Rice*, 1 Pick. 164; *Flynt* v. *Arnold*, 2 Met. 619; *Farnsworth* v. *Childs*, 4 Mass. 637; *Scripture* v. *Soapstone Co.*, 50 N. H. 571.

The defendant Morris had no knowledge that the plaintiff was in possession of the land in question, but, so far as the plaintiff or anybody else was concerned, he was at liberty to examine the apparent condition of the premises. He was not deceived by any misrepresentations or concealments of the plaintiff. He relied on his own judgment, and neglected an apparent duty. Like a purchaser having knowledge of facts sufficient to put him on his guard, he must be held chargeable with what he would have learned upon reasonable inquiry as to the plaintiff's right of possession. And it appears from the case that he would have learned of the plaintiff's equitable title. His title therefore cannot prevail in this suit.

It is unnecessary, in the view we have taken of the case, to consider the further question, whether the want of consideration for the assignment of the claim to Morris by Ward would prevent the former from acquiring a title against the plaintiff.

*Decree according to the prayer of the bill.*

STANLEY and SMITH, JJ., did not sit: the others concurred.