Merrimack,
No. 4782.

### HENRY PATTERSON *v.* BOSTON & MAINE RAILROAD.

Argued December 1, 1959.

Decided January 27, 1960.

388

*James C. Cleveland* (by brief and orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Joseph S. Ransmeier* (*Mr. Ransmeier* orally), for the defendant.

DUNCAN, J.   The issue transferred relates to the interpretation of RSA 373:1 and 33, requiring a railroad to "provide suitable . . . gates, crossings, cattle passes and other facilities for the accommodation of persons whose lands . . . are separated from a highway, by a railroad" (s. 1); and authorizing the Commission, in case of disagreement as to the "place, number, or kind" of the facilities to be provided, to "determine the number, places, time and manner of construction of the same."   (S. 33).

The Commission took no action under section 33.   Having ruled that "the word 'suitable' [in section 1] must be used in its broad sense, not only that the physical characteristics may be suitable for such a crossing, but that reasonable safety must also be considered," it found that "the proposed location is unsafe, and that it is impossible to provide a suitable crossing as requested."

Before 1850 there was no statutory provision of general application for the establishment of grade crossings, although charters of various railroads contained provisions relative thereto. See *Bolger* v. *Railroad*, 82 N. H. 372, 378. In *March* v. *Portsmouth Railroad*, 19 N. H. 372, decided in 1849, the court approved instructions to a jury that the owner of land crossed by a railroad "has the right to cross the road" and to construct crossings over it for his own use; and that since railroads were not bound to provide suitable crossings for the landowner, he must provide them for himself, and should therefore be allowed for this expense in the assessment of damages for the taking of the railroad's easement over his land.

RSA 373:1 and 33, *supra*, had their origin in Laws 1850, *c.* 953, *s.* 5, which provided that railroads should "make and maintain all necessary . . . cattle passes and farm crossings, for the convenience and safety of the land owners along the line . . . " and that in case of disagreement three justices of the peace should determine their location. C. S. (1853) *c.* 150, *s.* 45; *Horne* v. *Atlantic & St. Lawrence Railroad*, 36 N. H. 440, 442. Since that time, the location of crossings has been a matter of public regulation, under statutory provisions which have not changed in their material provisions. *Bolger* v. *Railroad*, 82 N. H. 372, *supra*. The phrase "suitable crossings" was substituted for "necessary crossings" in the revision appearing in P. S., *c.* 159, *s.* 1, with no purpose to alter the meaning of the section. See Commrs' Report, Public Statutes (1891).

Thus it is settled that a landowner whose land is cut off from a highway by a railroad has "the right to a suitable crossing" (*Costello* v. *Railway*, 70 N. H. 403, 405) where a reasonable necessity therefor is demonstrated (*Bolger* v. *Railroad*, 82 N. H. 372, 378; *Horne* v. *Railroad*, *supra*, 446); and that a "suitable crossing" is one reasonably safe and convenient for the purpose at a location to be determined according to the use made of the land, its physical characteristics, and "the practicability and comparative expense of the different modes of crossing, whether by a bridge over the road, a crossing at grade, or a pass under it." *Horne* v. *Atlantic & St. Lawrence Railroad*, *supra*, 445. See also, *Pierce* v. *Railroad*, 83 N. H. 466; *Shea* v. *Railroad*, 88 N. H. 462, 468. As elsewhere expressed, the question of "location" is to be determined by the application of the doctrine of "reasonable use," and the "convenience of all parties is to be considered in determining this question." *Costello* v. *Railroad*, *supra*, 405.

In the instant case, the necessity for a crossing is established by the fact that the plaintiff's land, upon which there is a cottage house some two hundred feet from the proposed crossing, is situated upon the shore of Tewksbury Pond on a tract bounded on all sides by the pond and the railroad's right of way, which in essence parallels the highway over the area involved.

The plaintiff seeks a vehicular crossing, while the Railroad is prepared to furnish him with space upon its right of way between the highway and the railroad on which to park his automobile, and a pedestrian crossing to adjoin the same. The plaintiff in his brief has indicated a need for seasonal use only. Whether a crossing for vehicular use is necessary, or whether the plaintiff's requirements would be satisfied by a pedestrian crossing is an issue upon which no finding has been made.

The Commission decided the question of location adversely to the plaintiff. Although his petition sought no specific location, in his testimony he requested a crossing at the point where the railroad and the highway have a common grade, and where a crossing was formerly located, from which a right of way extends northwesterly to the plaintiff's land across land of another owner abutting the railroad at that point. At the locus of the proposed crossing the view of the railroad track is somewhat limited in either direction, and greatly limited to the traveler's left whether the crossing is approached from east or west. The easterly rail is only fifteen feet from the easterly line of the railroad right of way, and eighteen feet from the traveled way of the highway. Thus an automobile stopped upon the approach, between highway and crossing, would be endangered by the overhang of a passing train unless sufficiently back from the rail for clearance, when it would be in danger of collision with traffic passing upon the highway.

The Commission, correctly ruling that "reasonable safety must also be considered," concluded that it is impossible to provide a suitable crossing as requested by the plaintiff. The testimony before the Commission contained evidence tending to show that neither an overpass nor an underpass would be practicable at any point north of the former crossing, because of physical features of the land, and the difference in grade between the highway and the railroad. In this connection the Commission found: "There is no other convenient location because the highway at the top of the

grade is comparable to the railroad grade in the vicinity where, at all other locations, there is a sharp difference in the grade."

In finding and ruling that "the proposed location is unsafe and that it is impossible to provide a suitable crossing as requested" the Commission correctly construed RSA 373:1 and 33 as applied to the plaintiff's request for a vehicular crossing. See also, RSA 373:22.

*Remanded.*

All concurred.