Coos,
No. 6075.

WALTER BRUCHHAUSEN & *a.*

*v.*

EDWIN C. WALTON & *a.*

April 5, 1971.

*Hinkley & Donovan* ( *Mr. Paul F. Donovan* orally ), for the plaintiffs.

*Gormley & Calamari* ( *Mr. Robert D. Calamari* orally ), for the defendants.

DUNCAN, J. The plaintiffs, Walter Bruchhausen and wife and Frank S. Dodge and wife, brought this bill in equity against Edwin C. Walton and wife, seeking to restrain the defendants from "relocating" an existing way which crosses the defendants' land to reach land of the plaintiffs Dodge, and a determination of the rights of the respective parties in access ways to their properties; and in particular a ruling that rights of way other than the existing travelled way used by the plaintiffs Dodge have been abandoned by the Waltons' predecessors in title.

The bill was heard by a Master ( *Leonard C. Hardwick*, Esq. ). The master's report was accepted by the Superior Court ( *Morris*, J. ), subject to the plaintiffs' exceptions. The questions of law presented by the plaintiffs' exceptions were reserved and transferred to this court by *Grant*, J., following dissolution of a temporary injunction.

The parties are owners of three tracts of land on the north side of Mountain View Road in Whitefield. The plaintiffs Bruchhausen own a tract of approximately five acres, with a dwelling thereon, which they acquired in 1958. The tract has a frontage of 380 feet on Mountain View Road, and is over 550 feet deep. Access to the premises is afforded over a paved driveway fifteen feet in width, extending north from Mountain View Road, bordering the westerly side of the tract for a distance of 331 feet to a point just north of the Bruchhausen house and garage.

In 1967 defendants Walton acquired title to a tract of approximately three acres, west of the Bruchhausen land on the west side of the driveway to the Bruchhausen house. The Wal-

ton tract has a frontage of 283 feet on Mountain View Road, and its rear or northerly boundary is on a line with the rear boundary of the Bruchhausen tract, and 500 or more feet from Mountain View Road.

Since 1961 plaintiffs Dodge have owned a nine acre tract adjoining both Bruchhausen and Walton on the north. The Dodge residence is situated some distance north of the Bruchhausen and Walton boundaries, and a caretaker's house is located in the southwesterly corner of the Dodge tract, close by the Walton north line.

Before 1944, all three tracts were held in common ownership and had constituted a part of the Goodwin farm, so called. The tract now belonging to the defendants Walton was first to be conveyed out, in 1944, by deed which also conveyed a right to pass and repass over a twenty foot right of way bordering the easterly side of the tract conveyed. In 1945, the tract now owned by the Bruchhausens was conveyed, together with the right to pass and repass over the same right of way. In 1947, the nine acre tract now owned by the plaintiffs Dodge was conveyed, together with " a right of way in common over the land southerly thereof to said Mountain View Road . . . as reserved in former deeds. " In 1952 the fee underlying the right of way was quitclaimed to the then owner of the tract now owned by the Waltons.

At some time during the year preceding April 1, 1952, the Bruchhausen dwelling was erected by the owner at that time. In April and May of the same year, by deeds given to the predecessor of the plaintiffs Dodge by the then owners of the Walton and Bruchhausen tracts, a new right of way in a slightly different location was established between Mountain View Road and the Dodge tract, described by course and distances, and shown on a recorded plan. The deeds relating thereto provided that the cost of construction and maintenance of the right of way should be shared equally by the owners of the three tracts in question, and expressed a purpose to relocate the earlier right of way created by prior conveyances. At approximately the same time the then owner of the Dodge tract was granted by tripartite agreement with owners of the other two tracts a right to install and maintain utility and water lines from Mountain View Road along the westerly boundary of the newly established right of way to the Dodge tract.

In November 1952 the Walton tract became the property of John B. Dodge, brother of the plaintiff Frank S. Dodge. At some time before 1958 when the plaintiff Walter Bruchhausen acquired the Bruchhausen premises, the paved driveway between the Bruchhausen and Walton tracts was built along a course substantially within the right of way established in 1952.

In 1961, the plaintiffs Dodge acquired the northerly nine-acre tract, and proceeded to build a house thereon. With the permission of his brother John, Frank Dodge then utilized and improved an old farm lane over John's land, now the Walton land, as part of a route by which to reach the northerly tract. As shown by the plans in evidence, this passway branched off in a northwesterly direction from the paved right of way before reaching the Bruchhausen house, at a point a little better than halfway of the 331 foot driveway, skirted around to the west of an old stone wall and certain birch trees, and then turned back northeasterly to rejoin the course of the undeveloped right of way established in 1952, approximately 100 feet north of the end of the paved driveway; and thereafter followed the general course of the 1952 right of way to the Frank Dodge land, entering between two sections of stone wall marking the corners of the Walton and Bruchhausen parcels.

Later, after the caretaker's house was erected in 1968 at the southwest corner of the Frank Dodge land, a new passway was used for access to this house, across what is now Walton land. This passway departed from the passway then used to reach the Frank Dodge house, at a point approximately 100 feet below the southerly boundary of the Dodge land, and extended diagonally northwesterly, to cross the southerly Dodge boundary about midway of the John Dodge land. In 1965 a board fence was erected by Frank Dodge and Bruchhausen opposite the Bruchhausen garage and between the Bruchhausen driveway and the passway used by Frank Dodge.

The defendants became interested in the John Dodge tract in 1966 and inspected it in February 1967. The premises were conveyed to them by John Dodge by deed dated March 27, 1967, containing an exception and reservation of an easement conveyed to the plaintiffs Dodge by deed of the same date.

The decision of the master herein turns on large part upon the interpretation of the latter conveyance which provided in pertinent part as follows: "All my right title and interest in an

easement over the northerly portion of certain premises owned by me in the town of Whitefield . . . said easement to run from a certain right-of-way now owned in common, by the grantees herein, one Bruchhausen and myself to the caretaker's cottage, so called, on land of the grantees herein. Said easement to be as presently located and used on the land."

The master concluded that this conveyance described the passway first used in 1966 to reach the caretaker's house, from where it branched off from the twelve foot passway used by the Dodges to reach their premises. At this point the passway was located over the twenty foot right of way established in 1952. The master ruled that south of that point, to the extent that the twelve foot passway departed from the course of the 1952 right of way, the twelve foot way had been used merely by parol license from John Dodge, and was revocable by the defendants Walton. Accordingly the master recommended that the plaintiffs' prayer for an injunction be denied; that access to the Dodge land be decreed to be by way of the 1952 right of way in which all parties have rights (as shown by the exhibit known as the Marshall Plan); that upon revocation by the defendants of the license to use the twelve foot passway (not including the part over the northerly portion of the Walton land to the caretaker's cottage as described in the deed of John Dodge), that the plaintiffs be enjoined and restrained from further use thereof; and that it be decreed that the defendants may remove the wooden fence, as an encroachment on their land.

In substance, the position advanced by the plaintiffs herein is that the conveyance from John to Frank Dodge and his wife "confirms" their right in the disputed twelve foot travelled passway; that the defendants, having had notice of the use being made before their purchase, took title "subject to the apparent encumbrances on the ground," and are thereby estopped; and that the right of way created by deeds in 1952 must be found to have been abandoned and the defendants held "estopped from resurrecting an old grant." We cannot sustain these contentions.

The plaintiffs maintain that the master erred in finding "that at no time was there ever a written instrument giving Frank the right of access over the [disputed] passway." They suggest that the master's interpretation of the deed from John to Frank Dodge and wife gives no meaning to the language "all my right, title

and interest in an easement," and leaves the plaintiffs without access to the caretaker's house, because the 1952 right of way, with which the easement as defined by the master would connect, has never been developed.

It may be true that the language "all my right, title and interest in an easement" is suggestive of conveyance of an existing easement previously acquired by the grantor, rather than creation of a new easement over the grantor's land; but the language of the deed which follows: "over the northerly portion of [my] premises," serves to restrict the grant to the passway to the caretaker's house, since the disputed passway, south of there, originated well within the southerly portion of the grantor's land.

While an air of certainty is lent by other provisions of the deed describing the easement, and the provision that it should be "as presently located and used on the land," location of the travelled way on the ground discloses ambiguities. The deed provided that the granted way shall run "*from* a certain right of way now owned in common" ( *i.e.*, the 1952 right of way ) "*to* the caretaker's cottage." ( Emphasis added ). This description, by itself, is consistent with either the short offshoot to the cottage, or the longer disputed way from the tarvia drive, since each branches off from the 1952 way.

In resolving this ambiguity, the master properly relied upon the reference to "the northerly portion" of the tract, which ruled out its application to the disputed way. There was also testimony by both parties to the conveyance creating the easement to support the master's conclusion. John Dodge testified on direct examination by the defendant that when Frank built his house he began using the disputed way with John's permission. In reply to the question, "Referring to what is delineated on the [Ainsworth] plan as the 12-foot travelled way, did you ever give him anything in writing? an easement or a deed?" John Dodge replied: "There was nothing in writing with respect to the use of that." Similarly, Frank Dodge testified on cross-examination, with respect to use of the "12-foot travelled way": Q. "Did . . . your brother ever grant you any — is there any recorded data or any rights — recorded rights over that property to you?" A. "No there is not." Q. "None at all?" A. "None at all." Q. "So it was just with your brother's permission since the time you purchased in 1961." A. "That is correct."

The master's ruling that the twelve foot passway running from

the paved driveway to where it rejoined the 1952 right of way "was merely a parol license . . . revocable at any time" is sustained. *Quimby* v. *Straw* 71 N.H. 160, 162, 51 A. 656, 657 ( 1901 ); *Hodsdon* v. *Kennett,* 73 N.H. 225, 60 A. 686 ( 1905 ); *Houston* v. *Laffee,* 46 N.H. 505 ( 1866 ).

The authorities cited by the plaintiffs with respect to "equitable rights" claimed by them do not support the argument made. Inquiry by the defendants concerning any claim of right in the disputed way, or to maintain the fence, both of which they saw on their inspection of the property, would have uncovered no use for a prescriptive period ( *Rosenblatt* v. *Kizell,* 105 N.H. 59, 192 A.2d 613 ( 1963 ) ), no claim of an unrecorded deed or of equitable rights arising out of errors in a recorded deed ( *Galley* v. *Ward,* 60 N.H. 331, 333 ( 1880 ) ), and no claim of rights used with the Dodge land when conveyed to them and necessary to its enjoyment. *Dunklee* v. *The Wilton Railroad Co.,* 24 N.H. 489, 495 ( 1852 ); *McCleary* v. *Lourie,* 80 N.H. 389, 117 A. 730 ( 1922 ); see *Butler* v. *Wheeler,* 73 N.H. 156, 59 A. 935 ( 1905 ); 25 Am. Jur. 2d Easements and Licenses *ss.* 27-33 ( 1966 ). We see no basis for holding the defendants estopped to rely upon the 1952 right of way, in which rights were granted to them as late as 1967.

This fact is also of significance on the issue of abandonment, since the rights granted were "to pass and repass . . . subject to rights of way in common . . . as now owned by Frank S. Dodge, Jr. and Virginia W. Dodge and one Bruchhausen. " The evidence did not compel a finding of abandonment, since it is settled law that nonuse, without more, will not result in extinguishment of a way created by formal written grant. *Gagnon* v. *Carrier,* 96 N.H. 409, 77 A.2d 868 ( 1951 ); *Rosenblatt* v. *Kizell supra.*

Finally, the plaintiffs complain that the 1952 right of way as shown on the Marshall plan, adopted by the master as the de-lineation of the right of way in which all of the parties have rights, is admittedly at variance with the right of way described in the deeds of 1952. The experts who testified at the trial con-ceded that there were unimportant discrepancies in the right of way as shown by the two plans submitted by the parties. While the Ainsworth plan shows the northerly end of the 331 foot seg-ment of the way to be somewhat easterly of where the Marshall plan placed it, the courses given by the Ainsworth plan for the center line differ from those specified by the deeds. The master

apparently considered that any discrepancies in the Marshall plan were inconsequential, and we find no reason to disturb this conclusion.

*Exceptions overruled.*

All concurred.