Merrimack
No. 84-452

## DOWNING HOUSE REALTY

### v.

## JUDITH R. HAMPE

August 7, 1985

*Law Offices of James J. Bianco, Jr.*, of Concord (*James J. Bianco, Jr.*, and *Lisa A. Rule* on the brief, and *Mr. Bianco* orally), for the plaintiff.

*Hampe and McNicholas*, of Concord (*Patrick J. McNicholas* and *Bruce E. Viles* on the brief, and *Mr. McNicholas* orally), for the defendant.

BROCK, J.    This appeal requires us to determine whether the master erred in finding that an easement had not been abandoned and that the use being made of the easement by the plaintiff, Downing House Realty (Downing House), was reasonable. In a Master's (*Robert C. Varney*, Esq.) report, approved by the Superior Court (*DiClerico*, J.), the court permanently enjoined the defendant, Judith Hampe, and her tenants and agents from interfering with the plaintiff's use of the easement. For the reasons that follow, we affirm.

The facts as found by the master are as follows. The plaintiff and the defendant own adjoining properties located, respectively, at 33 and 35 Pleasant Street in Concord. Downing House purchased its property in 1983, by deed which conveyed in part: "all of grantors' rights in a certain passway westerly of and adjacent to the tract above conveyed. Said passway being ten feet wide, and extending back a distance of one hundred and fifty feet more or less from Pleasant Street." The plaintiff has since renovated and improved its building and premises, and seeks to use the passway to get to and from a parking lot in the rear of its building. The defendant purchased the 35 Pleasant Street property in 1981 and has since converted it from a residential to a commercial property.

The easement in question originated in 1882, in a recorded deed of Lucy Grover, the defendant's predecessor in title, granting to Lewis Downing, Jr., the plaintiff's predecessor in title, "a right over my land situate on the south side of Pleasant Street in said Concord ten feet wide and extending southerly from said Pleasant Street on the easterly side of my lot and adjoining land of said Downing one hundred fifty feet to be used as a passway by him and his heirs."

In 1933, a wooden fence approximately four-and-one-half feet high was erected along a portion of the easement. Charles and Margaret Parsons, the plaintiff's predecessors in title, recorded an affidavit to this effect in the Merrimack County Registry of Deeds. The affidavit reads in pertinent part as follows: ". . . we caused a fence to be erected on both sides of a certain lot of land . . . being a passway over the land formerly of Lucy M. Grover . . . that this fence remained so erected for twenty-four hours . . . so that said passway was open for our private use and travel unobstructed by encumbrances of any sort."

A portion of the fence remained in place *after* the twenty-four hour period, along the westerly side of plaintiff's property, apparently to protect the plaintiff's predecessors' garden and to keep dogs on the property. The fence contained no gates or openings and prevented any use of the passway for ingress or egress to or from the plaintiff's lot. In addition, two large elm trees approximately twenty-four feet apart had grown in the passway so that it would be impossible for vehicular traffic to drive into the plaintiff's lot.

In 1953 or 1954, Mrs. Parsons, the plaintiff's predecessor in title, informed Mrs. Mullin, the defendant's predecessor in title, that the Parsonses had an easement over their property for the purpose of maintaining the exterior of the westerly side of their building.

On appeal, the defendant argues that the master should have found that the easement over the passway had been abandoned, except for purposes of maintenance of the westerly side of the plaintiff's building, by the plaintiff's predecessors in title for forty years or longer by non-use as evidenced by the erection of a fence with no gate or opening and by the growth of the two large elm trees in the passway. The defendant further argues that the plaintiff's use of the passway as sole access to a seventeen-car parking lot is an unreasonable expansion of the original grant.

We will not set aside a master's findings of factual determinations concerning abandonment if they are supported by the evidence, even if the evidence is conflicting, *Cricenti v. Bewley*, 120 N.H. 352, 353, 415 A.2d 675, 676 (1980), especially when the master is aided by a view of the property, as was the case here. *Delaney v. Gurrieri*, 122 N.H. 819, 822, 451 A.2d 394, 396 (1982).

██ It is well established that mere non-use of an easement does not result in its loss or destruction, even if continued for a long period of time. *Bruchhausen v. Walton*, 111 N.H. 98, 104, 276 A.2d 6, 10 (1971); *Gagnon v. Carrier*, 96 N.H. 409, 411, 77 A.2d 868, 869 (1951). Non-use may support a finding of intent to abandon, however, if the owner of the dominant estate performs "clear, unequivocal and decisive acts." *Id.* at 411, 77 A.2d at 870.

█ There was conflicting evidence presented to the master concerning when the fence was erected and for what purpose. The statement in the Merrimack County Registry of Deeds indicating that the fence was erected ". . . so that said passway was open for our private use and travel and unobstructed by encumbrances of any sort" was given particular emphasis by the master, who inferred from it that the Parsonses were thereby reaffirming their right to use the passway. Because there was evidence to support this finding, we cannot say that the master erred in finding as he did. *Cricenti v. Bewley, supra* at 354, 415 A.2d at 676–77.

The master further found that the growth of the two elm trees did not result in a permanent and total interference with the plaintiff's predecessors' use and enjoyment of the easement, and that allowing the trees to grow did not necessarily indicate the predecessors' intent to abandon the easement.

██ While the defendant is correct in stating that an abandonment could have taken place after 1933, the maintenance of the fence is not sufficient to compel a finding of an "unequivocal" act of abandonment. *See Bruchhausen v. Walton*, 111 N.H. at 104, 276 A.2d at 10. "The holder of an easement does not forfeit a part of it because he has no present need for it or because he is unlikely to exercise the whole of it." *Gagnon v. Carrier*, 96 N.H. at 411, 77 A.2d at 869. Also, the court may consider the permanency of any structure or structures in determining whether their erection signals an intent to abandon. RESTATEMENT OF PROPERTY § 504, comment e (1944). The master found that the fence and trees could easily have been removed at any time.

The defendant next contends that the proposed use of the passway as the sole access to a seventeen-car parking lot is an unreasonable use of the easement because it creates a safety hazard, as well as other problems not foreseen by the original parties. She contends that the advantages to the plaintiff are outweighed by the disadvantages to the defendant, such as the loss of parking spaces on the street and loss of a place to pile snow. She also maintains that, because the plaintiff could have used its own driveway to gain access to the parking lot, but elected rather to grass over this

driveway and use the ten-foot passway instead, the use is unreasonable.

In considering what uses may be made of an easement, this court applies the "reasonable use" theory. *Sakansky v. Wein*, 86 N.H. 337, 339, 169 A. 1, 2 (1933). "What is or is not a reasonable use of a way does not become crystallized at any particular moment of time." *Sakansky v. Wein, supra* at 341, 169 A. at 3. If the change of a use is a normal development from conditions existing at the time of the grant, such as an increased volume of traffic, the enlargement of a use is not considered to burden unreasonably the servient estate. *Logan v. Brodrick*, 29 Wash. App. 796, 800, 631 P.2d 429, 432 (1981). The uses to which easements may be put are questions of fact to be arrived at by considering all of the surrounding circumstances, including location, the uses of both parties' properties and "'the advantage of one owner's use and the disadvantage to the other owner caused by that use.'" *Titcomb v. Anthony*, 126 N.H. 434, 439, 492 A.2d 1373, 1376 (1985) (quoting *Delaney v. Gurrieri, supra* at 821, 451 A.2d at 395).

When the easement in this case was conveyed and the uses authorized under it set forth, its use was intended to be incidental to a residential use. The master found and the evidence clearly indicates, however, that both properties, as well as the surrounding area, have been converted to commercial use. Although the passway was not intended in 1882 to be used for light passenger vehicles, what is reasonable today need not be determined by reference to the situation as it existed in 1882.

The defendant's argument that the plaintiff could have used its own driveway to gain access to the parking lot is in itself not evidence of an unreasonable use. The servient estate has no right to insist upon the use of any other land of the dominant estate, "regardless of how little damage or inconvenience such use of the dominant estate might occasion." *Sakansky v. Wein, supra* at 340, 169 A. at 3. On the basis of the evidence before him, the master could reasonably conclude that there was no abandonment of the easement, and that its present use is not an unreasonable expansion of the original grant.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.