Rockingham
No. 2003-727

## BOSTON AND MAINE CORPORATION

v.

## SPRAGUE ENERGY CORPORATION

Argued: June 10, 2004
Opinion Issued: December 3, 2004

*Ransmeier & Spellman Professional Corporation*, of Concord (*R. Matthew Cairns* and *John T. Alexander* on the brief, and *Mr. Alexander* orally), for the plaintiff.

*Wiggin & Nourie P.A.*, of Manchester (*Thomas J. Pappas* and *William J. Edwards* on the brief, and *Mr. Pappas* orally), for the defendant.

BRODERICK, C.J. The plaintiff, Boston and Maine Corporation (B&M), appeals and the defendant, Sprague Energy Corporation (Sprague), cross-appeals an order of the Superior Court (*Lewis*, J.) concerning B&M's termination of licenses permitting Sprague to utilize pipes crossing over and under B&M's railroad track. B&M argues on appeal that the trial court erred: (1) when it ruled that Sprague's commercial petroleum pipes may constitute "suitable crossings or other facilities" within the meaning of RSA 373:1 (1995); (2) when it implicitly ruled that RSA 373:1 requires a railroad to provide crossings or other facilities to benefit a private business that purchased property on both sides of a railroad line after the line was established; (3) by ruling that RSA 373:1 may create sufficient legal authority for the taking of railroad property; and (4) by failing to rule that any taking of B&M's property by Sprague requires the payment of just compensation. For its part, Sprague argues on cross-appeal that the trial court erred: (1) in denying its motion for summary judgment and ruling that B&M's claims regarding the removal of its railroad track by Sprague were governed by the twenty-year statute of limitations for the recovery of real estate under RSA 508:2 (1997); and (2) in ruling that Sprague's underground pipelines constitute an unreasonable use, and exceeded the scope, of Sprague's express easement granted in 1873 for a grade crossing. We affirm.

I

The record supports the following facts. B&M is a railroad company that owns a strip of real estate, known as the Newington Branch, which extends approximately 3.5 miles from Portsmouth to Newington and consists of railroad track, track bed and associated properties and structures. Sprague markets energy products, including gasoline, natural gas and oil. It owns property and related facilities along the Newington Branch, including petroleum holding tanks and pipelines at the Gosling Road Terminal, the Avery Lane Terminal and the River Road Terminal.

Between approximately 1950 and 2000, Sprague and its predecessors entered into several license agreements with B&M for the use of B&M's property for vehicle crossings, underground water and fuel pipes, fuel pipes over pipe bridges and a railroad side track. The agreements provided that they could be terminated at will by either party. Sprague's Avery Lane Terminal is a commercial fuel and petroleum facility with docks located on the Piscataqua River where Sprague receives gasoline, among other products, that is shipped by barge. The gasoline is unloaded and piped across Sprague's property to loading racks where it is loaded into trucks and delivered to service stations. Sprague's pipes run from the docks to the loading racks and pass beneath B&M's Newington Branch. Sprague owns the property on both sides of the Newington Branch at its Avery Lane Terminal. The Newington Branch separates Sprague's docks and storage tanks from the Spaulding Turnpike.

In January 2001, an internal review of B&M properties suggested to B&M management that Sprague had modified, installed, relocated or overburdened certain appurtenances on the Newington Branch in violation of the applicable license agreements. B&M proceeded to terminate the agreements and offered to negotiate new arrangements with Sprague for any licenses it wanted to continue. When no new agreements were negotiated, B&M filed suit seeking an injunction to prevent Sprague from any unlicensed and unauthorized occupation and use of B&M's property, to require Sprague to remove certain appurtenances, and to require Sprague to replace and restore railroad track it had allegedly removed in violation of a 1973 deed.

Sprague counterclaimed, seeking a declaration that RSA 373:1 imposed a duty upon B&M to provide suitable crossings over and under its track for the accommodation of Sprague's pipelines and other facilities at the Avery Lane Terminal and a declaration that Sprague's easement for a vehicular grade crossing at Avery Lane also covered Sprague's seven underground pipes.

Following a four-day bench trial the court ruled, among other things, that the statutory purpose of RSA 373:1 is to aid landowners with land divided by a railroad and that the term "facilities" may include underground pipes such as those at Avery Lane. The court also ruled that Sprague's seven underground pipes were not authorized by the grade crossing easement granted in 1873. The court agreed with B&M that Sprague's removal of the railroad track was in violation of the 1973 deed and ordered Sprague to restore the track or compensate B&M for doing so.

## II

The first issue we address is whether the trial court erred when it held that Sprague's commercial petroleum pipes may constitute "suitable facilities" within the meaning of RSA 373:1. This statute provides that "[i]t shall be the duty of every railroad to provide . . . suitable gates, crossings, cattle passes and other facilities for the accommodation of persons whose lands are divided, or are separated from a highway, by a railroad." RSA 371:1. B&M argues that the statute delineates three specific "facilities" that a railroad must provide to persons whose lands are separated from a highway by a rail line—gates, crossings and cattle passes—and that Sprague's underground pipes do not fit within any of those categories. Sprague argues that limiting RSA 373:1 as B&M suggests would render the words "other facilities" meaningless and that the term is "a catchall phrase that is intended to include various types of crossings, such as those that go over or under railroad tracks, which provides the statute with flexibility to change with changing circumstances and times."

"In matters of statutory interpretation, this court is the final arbiter of the legislature's intent." *Nilsson v. Bierman*, 150 N.H. 393, 395 (2003). "We begin by examining the language of the statute and ascribing the plain and ordinary meanings to the words the legislature used." *Id.*

"[I]t is settled that a landowner whose land is cut off from a highway by a railroad has the right to a suitable crossing where a reasonable necessity therefor is demonstrated." *Patterson v. Boston & Maine R.R.*, 102 N.H. 387, 389 (1960) (quotation and citation omitted). "[A] suitable crossing is one reasonably safe and convenient for the purpose at a location to be determined according to the use made of the land, its physical characteristics, and the practicability and comparative expense of the different modes of crossing, whether by a bridge over the road, a crossing at grade, or a pass under it." *Id.* (quotations omitted). "The standard to be applied in determining the duty of a railroad under RSA

371:1 is that of the reasonable necessity for a crossing. . . ." *Appeal of Meserve*, 120 N.H. 461, 463 (1980).

The trial court noted that the word "pipe" or "pipeline" is not technically included in the wording of RSA 373:1. Nevertheless, it interpreted "the broad terms 'suitable ... crossings ... and other facilities' to include pipelines that came into existence after 1852," when the statute was enacted. The trial court reasoned that "RSA 371:1's spirit and intent is to allow a landowner access to their [*sic*] own property and the . . . conclusion that the seven underground pipes may constitute a form of 'suitable crossings' and/or 'other facilities' is consistent with this intent." In reaching this conclusion, the trial court looked to uncontroverted testimony from a representative of the New Hampshire Department of Transportation, Bureau of Rail and Transit, that the term "facilities" includes underground pipes. The court also relied upon evidence that for the past fifty years, B&M has consistently referred to pipes as "facilities" in its license agreements.

■ We hold that the general term "other facilities" as used in the statute encompasses underground pipes. *See Faulkner v. Keene*, 85 N.H. 147, 158 (1931) (legislative enactments apply alike to persons, subjects and business within their general purview and scope existent at the time of the enactments and to those coming into existence subsequent to their passage). The language of RSA 373:1 is straightforward and its intent is plain: to accommodate landowners whose property is divided or separated from a highway by a railroad. Here, Sprague's property is separated from the Spaulding Turnpike by B&M's railroad, and its underground pipes constitute a suitable crossing that is reasonably necessary for the conduct of its business. We reject B&M's argument that the provisions of RSA 373:1 do not apply because Sprague bought the property at issue after the railroad was already established. We fail to see a difference whether the property is separated from a highway by a railroad before or after its purchase. In either case, the statute's requirements apply.

### III

B&M argues that the trial court erred by "failing to find" that RSA 373:1 "does not create sufficient legal authority for the taking of railroad property" and "by failing to rule" that "any taking of B&M's property requires the payment of just compensation, which should be based on fair market value." Accordingly, B&M argues that RSA 373:1 as applied by the trial court amounts to an unconstitutional taking for which B&M is entitled

to just compensation. We hold that this issue was not properly preserved for appeal.

B&M's complaint before the trial court sought: an injunction to prevent Sprague from any unlicensed and unauthorized occupation and use of B&M's property; an order requiring Sprague to remove certain appurtenances; an order requiring Sprague to replace and restore railroad track it had allegedly removed in violation of a 1973 deed; and damages for trespass, unjust enrichment and breach of contract. The complaint did not raise the issue of a taking of private property without just compensation or the constitutionality of RSA 373:1. During the four-day bench trial there was no argument presented concerning the constitutionality of the statute or any evidence submitted as to specific damages regarding valuation or fair market value. In addition, there is nothing in the record to indicate that this issue was raised in a motion for reconsideration following the trial court's order on the merits.

B&M made general reference to taking issues in four of its fifty-six requests for rulings of law. The court's order on the merits carefully and thoroughly addressed issues concerning termination of the license agreements, interpretation of the 1873 easement, application of RSA 373:1, operation of the 1973 deed, and damages. At the end of the order, the court stated that "[b]oth parties here have submitted requests for findings of fact and rulings of law. The Court's findings and rulings are embodied in its narrative discussion above. Therefore, each party's requests are *GRANTED* to the extent that they are consistent with this order; otherwise, they are *DENIED*."

Although B&M's requests for rulings of law make broad passing reference to the prohibition against taking private property without just compensation, the record before us reveals that B&M made no specific arguments to the trial court on this issue. Passing reference, otherwise ignored, does not preserve an issue on appeal. *See In re Estate of Leonard*, 128 N.H. 407, 409 (1986); *N.H. Dep't of Corrections v. Butland*, 147 N.H. 676, 679 (2002) (we will not review constitutional issues on appeal that were not presented below).

## IV

Sprague argues that the trial court erred by ruling that its pipes were not a reasonable use of an express easement it was granted in 1873. The relevant portion of the so-called 1873 Rollins deed states that "said Railroad Company are [*sic*] to build and maintain a grade crossing near my house." The trial court concluded that Sprague's seven underground pipes at the Avery Lane grade crossing were not a reasonable use or

extension of Sprague's express easement for the grade crossing granted pursuant to this deed. Sprague contends that its pipes underneath the railroad track are "simply a reasonable and foreseeable extension of the scope of the original easement, in light of the industrial evolution of the surrounding property." We address this issue separately from the statutory analysis under RSA 373:1 in section II above. Sprague's statutory rights are independent of its rights under the easement.

██ In determining permissible use of an easement, courts are guided by the principle of "reasonable use." *Downing House Realty v. Hampe*, 127 N.H. 92, 96 (1985). An enlargement of use is permissible if "the change of a use is a normal development from conditions existing at the time of the grant, such as an increased volume of traffic." *Id.* Reasonable use is a question of fact for the trial court. *Id.* "We will not overturn the factual findings of the trial court ... when they are supported by the evidence." *Arcidi v. Town of Rye*, 150 N.H. 694, 702 (2004).

██ The owner of an easement "cannot materially increase the burden of it upon the servient estate, nor impose a new or additional burden thereon." *Crocker v. Canaan College*, 110 N.H. 384, 387 (1970). "The test to determine the right to make a particular alteration is whether the alteration is so substantial as to result in the creation and substitution of a different servitude from that which previously existed." *Id.* (quotation omitted); *see, e.g., Nadeau v. Town of Durham*, 129 N.H. 663, 668 (1987) (reasonable use did not support expansion of right-of-way from serving two single-family dwellings and two small apartments to one serving fourteen housing units); *Delaney v. Gurrieri*, 122 N.H. 819, 822 (1982) (reasonable use theory did not permit defendants to cut down two trees in easement to lake to allow boat to be hauled by vehicle rather than carried); *Crocker v. Canaan College*, 110 N.H. at 387-88 (expansion of sewage easement to serve 200 college students and staff nine months per year instead of 35-guest inn two months per year properly enjoined).

In its order, the trial court reasoned that "[w]hen the easement in this case was conveyed and the uses authorized under it set forth, its use was intended to be incidental to residential or agricultural use." Noting that the area has been converted over time to commercial and industrial uses, the court nonetheless found that "it was neither contemplated nor reasonably foreseeable that Rollins' successor in title would be an energy corporation, which would attempt to expand the use of the 'grade crossing' to include the installation of seven commercial underground fuel pipes. Such an enlargement of use certainly would work to unreasonably burden B&M's property given the safety risks and potential liability."

■ We uphold the trial court's decision. The court's finding that the easement for a grade crossing granted in 1873 would be unreasonably burdened. if it were extended to encompass seven underground. pipes carrying commercial gasoline is supported by the evidence. The change of use of the grade crossing by Sprague is not "a normal development from conditions existing at the time of the grant." *Downing House Realty*, 127 N.H. at 96.

## V

By deed dated December 18, 1973, B&M conveyed a 5.48 acre parcel of land located at the River Road Terminal to Sprague's predecessor-in-title. The deed provides in part: "Excepting from this conveyance any and all tracks and sections of railroad track and railroad track materials located within the limits of the above-described parcel. Said conveyance is hereby made subject to the reserved right of the grantors, their successors, assigns and licensees, from time to time and at any and all times to use, operate, maintain, remove or retire in place all or any part of the railroad trackage and track materials located northwest of the area marked 'END OF TRACK' on plan."

In 1997 Sprague upgraded its River Road Terminal and removed about 375 feet of railroad track. B&M sought an order requiring Sprague to replace the track or, in the alternative, compensate B&M for the removal. Sprague filed a motion for summary judgment arguing that B&M's claim was barred by the three-year statute of limitations for personal actions under RSA 508:4 because the alleged removal of the track occurred more than three years before the filing of the lawsuit. B&M argued that Sprague's removal of the track is an assertion of ownership rights adverse to B&M's deeded interest in land and that an action to enforce a right to ownership is governed by the statute of limitations for recovery of real estate, RSA 508:2.

The Superior Court (*Hollman*, J.) ruled in favor of B&M. The court's order states that "B&M has asserted sufficient facts ... to support its argument that Sprague's removal of B&M's property is an 'assertion of ownership rights adverse to B&M's interest in the land.' ... Because an assertion of ownership rights of property is governed by RSA 508:2 and not RSA 508:4, B&M's claim regarding removal of the property falls within the twenty year statute of limitations time frame provided in that statute." On appeal, Sprague argues that the court's decision was erroneous because B&M's claim is a personal action and thereby time-barred.

"When reviewing the denial of a motion for summary judgment, we consider the pleadings and any accompanying affidavits, and all proper

inferences drawn from them, in the light most favorable to the nonmoving party." *Porter v. City of Manchester*, 151 N.H. 30, 40 (2004). "Summary judgment will be granted when there is no genuine issue of material fact to be decided, and the moving party is entitled to judgment as a matter of law." *Id.*

The 1973 deed clearly exempts from the conveyance all railroad track and track materials. B&M alleged that removal of the track bed by Sprague "significantly hindered the Railroad's operations." We agree with the trial court that Sprague's removal of B&M's track was a deliberate exercise of ownership rights adverse to B&M's deeded interest in the land. Railroad track installed upon the railroad's land that is integral to the railroad's successful operation becomes a part of the property. *Thompson v. Valley Railroad Co.*, 32 U.S. 68, 74-75 (1889). B&M's action is one to enforce a right to ownership in real property, and therefore the twenty-year limitations period set forth in RSA 508:2 applies. *See Hewes v. Bruno*, 121 N.H. 32, 34 (1981). Because this evidence discloses no genuine issue of material fact and B&M is entitled to judgment as a matter of law, we affirm the denial of summary judgment.

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.