VERMONT SUPERIOR COURT
Windsor Unit
12 The Green
Woodstock VT  05091
802-457-2121
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 21-CV-00586



Robert Zimpfer and Judith Zimpfer
     Plaintiffs

v.

Patricia Davis, Alwyn Dawkins, Nadia Dawkins,
Alice Nitka, Lloyd Senior, Marilyn A. Comey as trustee
for the Marilyn A. Comey Revocable Trust, Okemo Pines LLC,
and the Town of Ludlow
     Defendants

Findings of Fact and Conclusions of Law

At issue is whether plaintiffs Robert and Judith Zimpfer may use an easement to access their property in Ludlow, Vermont. The following factual findings and conclusions of law were established by a preponderance of the evidence presented during a bench trial.

Mary Davis was the original owner of all of the lands involved in this case. In 1982, she subdivided her lands and sold to defendant Alice Nitka's predecessor (1) the fee-simple title to one of the subdivided properties and (2) the fee-simple title to a newly-created private road, which provided access to the subdivided properties from the public highway. In her deed to Ms. Nitka's predecessor, Ms. Davis reserved for herself and "her heirs and assigns" an easement to use the first 799 feet of the private road for utilities and "foot and vehicular traffic."

In 1990, Ms. Davis built a home on one of the properties that she retained. She also built a driveway that connected her home to the private road at a location several hundred feet past the end of the 799-foot right of way, and she and her family used the driveway and the road openly and continuously thereafter. Ms. Nitka and her late husband (who by then had become the owners of their parcel) were aware that she had done this, and they neither objected nor asserted any rights in response to her actions.

Ms. Davis eventually passed away, and her family thereafter sold the residential property to another family, who then sold the property to plaintiffs Robert and Judith Zimpfer. Plaintiffs then subdivided the property into an eleven-acre residential property (which included the former residence of Ms. Davis, along with her driveway, and which they sold to defendants Alwyn and Nadia Dawkins) and a five-acre undeveloped parcel (which plaintiffs kept for themselves).

It is undisputed that the Dawkins family are the owners of the former residence of Ms. Davis, and that they have both a deeded easement to use the first 799 feet of the private road for utilities and foot and vehicular traffic, and a prescriptive easement to use the remaining distance of the private road necessary to reach their driveway.[1] *Schonbek v. Chase*, 2010 VT 91, ¶ 8, 189 Vt. 79; *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 155 (1989); *Greenberg v. Hadwen*, 145 Vt. 112, 114 (1984). It is also conceded that plaintiffs have a right to use the deeded easement to the 799-foot mark. At issue is whether plaintiffs have a successive prescriptive easement to use the private road past the 799-foot mark to access their five-acre undeveloped property.[2]

As a general rule, appurtenant easements run with the land, regardless of whether they are deeded easements or prescriptive easements. *Barrett v. Kunz*, 158 Vt. 15, 18 (1992); *Russell v. Pare*, 132 Vt. 397, 407 (1974); Restatement (Third) of Property: Servitudes § 5.1. The general rule applies when a dominant estate is transferred, and also when the dominant estate is subdivided. In a case involving a subdivision of a dominant estate, each of the subdivided properties are "entitled to make the uses privileged by [the] easement," so long as the subdivision does not unreasonably increase the burden upon the servient estate. Restatement (Third) of Property: Servitudes § 5.7(1); Restatement (First) of Property § 487. If the subdivision unreasonably increases the burden upon the servient estate, the rule is not that one of the subdivided properties may not use the easement, but rather that the subdivided properties must apportion between themselves the rights to use the easement. Restatement (Third) of Property: Servitudes § 5.7(1); Restatement (First) of Property § 488.

In this case, the dominant estate was subdivided. Fundamentally, therefore, this case is about whether the subdivision unreasonably increased the burden upon Ms. Nitka's estate.

Ms. Nitka credibly and persuasively testified at trial about what the subdivision would mean for her and her family. She described the private road as a dirt road that includes a steep hill, and which runs from the public highway through the woods, serving several properties before it reaches Ms. Nitka's property. At that point, the road continues along the edge of Ms. Nitka's front yard, with a stone wall on the far side of the road. The front windows of Ms. Nitka's house are oriented towards the road, and there are not any visual barriers between the yard and the road. The private road in front of

---

[1] In a prior summary-judgment ruling, the court questioned whether Ms. Davis's use of the road was sufficiently "hostile" to establish the creation of a prescriptive easement. See *Guibord v. Scholtz*, 2006 VT 22, ¶ 5, 179 Vt. 623 (describing element). At trial, the evidence was clear that prescription was the theory that reflected the common neighborhood understanding of what had transpired, and that there was not another theory that adequately explained why Ms. Davis could use the private road past the 799-foot mark. Based upon the evidence presented, the court was persuaded that the element of "hostility" was present even though the interactions were polite, courteous, and neighborly. See Restatement (Third) of Property: Servitudes § 2.16 cmt. a (criticizing the connotations of the term "hostility" and emphasizing that the policy purposes of the doctrine are satisfied in cases such as this).

The court had also questioned whether the 1982 deed should be interpreted in a way that recognized that the 799-foot distance did not correspond to any particular landmark, and was probably intended to avoid regulatory oversight rather than to truly demarcate the rights of the parties. See, e.g., *Agency of Natural Resources v. Short*, 165 Vt. 277, 279 (1996) (explaining that, at the time, there was a "road rule" in which an Act 250 permit was needed for subdivisions that created a new road of "more than 800 feet in length"). At trial, none of the parties were especially interested in this interpretation of the deed, and more importantly, there was evidence that the 799-foot distance was adequate for the subdivision as it then existed. In other words, there was a reasonable basis for reading the deed to mean what it said. In the end, the court accepts the theory of prescription and decides the case accordingly.

[2] If plaintiffs do not have a right to use the prescriptive easement, they seek the creation of an easement by necessity across either the lands of defendant Okemo Pines LLC or defendant Town of Ludlow. With the agreement of the parties, the court bifurcated the proceedings in order to determine first whether plaintiffs have a right to use the prescriptive easement (because if they do, the questions relating to the creation of an easement by necessity are moot).

the house is intimately connected with the family's experience of living there, and Ms. Nitka and her family have used the road for a generation for such activities as walking, strolling children and grandchildren, and sledding. After passing by the Nitka home, the road continues and serves (1) the former residence of Ms. Davis (now owned by the Dawkins family), (2) the home at the end of the road (now owned by defendant Lloyd Senior, who has an uncontroversial deeded easement to use the entire length of the private road), and (3) perhaps plaintiff's subdivided property as well. In other words, the effect of the subdivision is that the private road in front of her house will be used by three residential homes, instead of two.

At the time Ms. Nitka purchased her home in 1985, she understood that the home at the end of the road (now owned by Lloyd Senior) would be using the private road in front of her home. She also understood that Ms. Davis might someday build a home, but her expectation was that there would be only one single-family home built on Ms. Davis's property.[3] Ms. Nitka testified that she never anticipated that there might be additional subdivisions and additional homes using the private road past her home, and she explained credibly and persuasively that she would experience additional traffic as an unreasonable infringement upon the lifestyle to which she and her family have become accustomed.

It is beyond question that the effects described by Ms. Nitka are externalities associated with plaintiffs' subdivision of their property. An economic analysis of the situation would clearly support an outcome in which plaintiffs compensated Ms. Nitka for the fair value associated with the increased traffic upon the private road in front of her home. Likewise, an economic analysis would disfavor a solution that awards plaintiffs the benefits of the increased use of the easement while imposing upon Ms. Nitka the externalized costs of plaintiffs' choices.

Existing law, however, is not aligned with this economic analysis, and instead favors an approach that is meant to accommodate reasonable future development of dominant estates. See, e.g., Restatement (Third) of Property: Servitudes § 4.10 cmt. b (explaining that "the public policy favoring socially productive use of land generally leads to striking a balance that maximizes the aggregate utility of the servitude beneficiary and the servient estate"); *Rowe v. Lavanway*, 2006 VT 47, ¶ 23, 180 Vt. 505 (mem.) (explaining that "the manner, frequency, and intensity of the use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate") (quoting Restatement (Third) of Property: Servitudes § 4.10 cmt. f); *Derryberry v. Craig*, 335 S.W.3d 518, 521–22 (Mo. Ct. App. 2011) (disavowing the type of strict economic analysis discussed in the preceding paragraph). The idea is that prescriptive easements "must encompass some flexibility of use, and adapt to natural and foreseeable developments in the use of the surrounding land." *Gutcheon v. Becton*, 585 A.2d 818, 822 (Me. 1991); *Downing House Realty v. Hampe*, 497 A.2d 862, 865 (N.H. 1985); accord *Schonbek*, 2010 VT 91, ¶ 9 (explaining that the extent of use of a prescriptive easement may "vary in some degree" from the use that gave rise to the easement). Under this approach, subdivision of a dominant estate is understood to be "a normal occurrence," and the question is not whether the subdivision has increased the burden upon the servient estate, but rather whether the increased burden is unreasonable. Restatement (Third) of Property: Servitudes § 5.7 cmt.

---

[3] Ms. Nitka's expectations were rooted, in part, in her own deed. In that deed, her predecessor included a statement to the effect that Ms. Davis had a right to use the private road past the 799-foot mark for the purpose of providing "access to a single family residence only." In a prior summary-judgment decision, this court clarified that the deed did not establish enforceable restrictions upon the uses made by Ms. Davis and her successors, because they were "strangers to the deed." However, the deed is an objective, meaningful, and descriptive reference point for Ms. Nitka's own expectations about what could happen with the private road in front of her home.

21-CV-00586 Robert Zimpfer et al v. Patricia Davis et al

a; Restatement (First) of Property § 488; *Gutcheon*, 585 A.2d at 822; *Bodman v. Bodman*, 321 A.2d 910, 912 (Pa. 1974).

In determining whether an increased burden is unreasonable, the evidence must show that the subdivision resulted in a change in the "kind" of use that is made of the easement, as opposed to merely the "extent" of the use. *Weeks v. Wolf Creek Indus., Inc.*, 941 So.2d 263, 272 (Ala. 2006); *Downing House Realty*, 497 A.2d at 865; *Shooting Point, LLC v. Wescoat*, 576 S.E.2d 497, 503 (Va. 2003); Restatement (Third) of Property: Servitudes § 4.10 cmt. f; cf. *Schonbek*, 2010 VT 91, ¶ 9 (explaining that the extent of use of a prescriptive easement may "vary in some degree" from the use that gave rise to the easement so long as the kind of use made of the easement is "within the range of the privileges asserted by the adverse use"). Under this approach, the subdivision would be unreasonable if it resulted in a change in the kind of traffic crossing the easement (e.g., if the traffic became commercial or industrial traffic instead of residential traffic), but not if the subdivision resulted in "a mere increase in the volume of traffic" across the easement.[4] *Gutcheon*, 585 A.2d at 822; *Downing House Realty*, 497 A.2d at 865.

Here, Ms. Nitka testified about the negative impacts of increased residential traffic upon her property and upon her family's experience of living at the property. She explained that increased traffic will have some negative effect upon her property value, that increased traffic will interfere with her peace and enjoyment of the land, and that increased traffic will result in increased wear and tear on the small dirt road.[5] *Weeks*, 941 So.2d at 272. Even taking all of this as true, however, these negative impacts are all associated with an increase in "the volume of traffic" on the private road, as opposed to a change in the kind of use made of the private road. *Gutcheon*, 585 A.2d at 822. For this reason, although the court prefers the conceptual clarity of a strict economic analysis, and although the court empathizes with Ms. Nitka's experience of the probable effects of the subdivision upon her family, the court concludes that the negative impacts of increased residential traffic are not unreasonable under existing law and the circumstances presented here. *Id*.; *Downing House Realty*, 497 A.2d at 865.

A different set of rules applies, however, to the question of whether plaintiffs may construct a new driveway past the existing driveway.[6] Here, the rules are that a plaintiff may not extend the scope of a prescriptive easement, e.g., *Dennis v. French*, 135 Vt. 77, 80 (1977), and that plaintiff may not unilaterally relocate the easement or otherwise insist that the easement be physically extended in order to accommodate their driveway, e.g., *In re Shantee Point, Inc.*, 174 Vt. 248, 261 (2002); *Sargent v. Gagne*, 121 Vt. 1, 12 (1958); *Downing House Realty*, 497 A.2d at 865. In this case, Ms. Nitka has not consented to the extension of the prescriptive easement, and plaintiffs have not otherwise demonstrated

---

[4] A substantial criticism of the rule might be that it appears to lack boundaries. Surely there must be limits upon the amount of residential development that can occur before the effects become unreasonable? Here, one principle that emerges from the cases is that the dominant estate may evolve in ways that are reasonable and permitted by existing laws, but that the dominant estate cannot force adaptations in the servient estate in order to accommodate its development. *Gutcheon*, 585 A.2d at 823. In other words, as applied to this case, further development of the former Davis property is limited by the reality that the parcels are accessed by way of a single-lane dirt road; the dominant estates cannot force the road to be widened, lengthened, or paved in order to facilitate their development. As a practical matter, this serves as a limitation against the possibility of condominiums or other forms of planned-unit developments. Another source of limitations could arise from contractual agreements between the parties for restrictions that are incorporated into their deeds.

[5] Maintenance costs for the private road are currently shared among all properties based upon an agreed-upon formula. Plaintiffs acknowledge that they will responsible for sharing in the maintenance costs of the road.

[6] Plaintiffs actually began constructing their new driveway by cutting trees and dismantling part of Ms. Nitka's stone wall without permission before she saw them and asked them to stop.

an entitlement to use the easement for an additional distance in order to accommodate a new driveway access. For this reason, the court concludes that any access to the subdivided parcel must use the same access point as the existing driveway.[7]

A final consideration bears mention. Some defendants have argued that plaintiffs are not entitled to use the prescriptive easement at all, because the subdivided parcel consists mostly of lands that Ms. Davis purchased in 1988, and which were not part of the original subdivision.[8] This argument relies upon the rule that a prescriptive easement may not be used by "property acquired by the dominant-tenement owner *after* creation of the servitude." *Weeks*, 941 So.2d at 272 (emphasis added). Here, the lands at issue were purchased by Ms. Davis in 1988, but the prescriptive easement was not created until 2005. In other words, the rule does not apply to this case because plaintiff's property was not "property acquired by the dominant-tenement owner *after* creation of the servitude."[9] *Id*. (emphasis added).

For these reasons, the court concludes that (1) both of the subdivided parcels have the legal right to use both the deeded easement and the prescriptive easement, and that (2) the subdivision does not result in an unreasonable increase in the burden upon the servient estate, but that (3) plaintiffs must access their property from the existing driveway, rather than extend the prescriptive easement by creating a new driveway access. It follows from these conclusions that there will be no need to create an easement by necessity across the lands of Okemo Pines LLC or the Town of Ludlow. Plaintiff is requested to prepare a form of judgment.

Electronically signed on Thursday, April 18, 2024 pursuant to V.R.E.F. 9(d).


H. Dickson Corbett
Superior Court Judge

Alison M. Johannensen
Assistant Judge
(as to facts)

David Singer
Assistant Judge
(as to facts)

Vermont Superior Court
Filed 04/18/24
Windsor Unit

---

[7] This means that plaintiffs must use the driveway that serves the Dawkins residence, and cross the Dawkins property in order to access their subdivided parcel. As an alternative, plaintiffs and the Dawkins may negotiate with Ms. Nitka for a deeded right that permits the new driveway access.

[8] This argument relates to the differentiation between the so-called Thompson Lot, the so-called Spaulding Lot, and the so-called King Lot, about which there was extensive evidence at trial.

[9] Again, the parties have not raised a serious issue about the right of plaintiffs to use the deeded easement. Even though the deeded easement was created in 1982, the purchase of the additional property in 1988 was meant to facilitate the construction of Ms. Davis's house, which was intended all along. The court is not persuaded that the rule discussed in *Weeks* was meant to apply to this situation.

Order

21-CV-00586 Robert Zimpfer et al v. Patricia Davis et al